86 P.3d 232 (2004)
STATE of Washington, Respondent,
v.
Ray Nmn SAUNDERS, Appellant.
No. 28388-3-II.
Court of Appeals of Washington, Division 2.
March 24, 2004.
*236 John Michael Sheeran, Pierce Cty Prosecutor S, Tacoma, WA, for Respondent.
Mary Katherine Young High, Tacoma, WA, for Appellant. *233 *234
*235 SEINFELD, J.
Ray Saunders appeals murder, rape, robbery, and kidnapping convictions. He challenges the sufficiency of the evidence to prove the robbery and kidnapping charges and he claims that the trial court improperly admitted his coerced statements, made evidentiary errors, and lacked judicial authority. Finally, he contends that his counsel was ineffective for, among other claims, failing to raise the issue of merger and same criminal conduct, and that there was cumulative error. We find no trial court error but agree that it was ineffective for defense counsel to fail to raise the issue of same criminal conduct. Thus, we affirm the conviction but remand for the appointment of new counsel and for resentencing.

FACTS
On the evening of February 29, 2000, Marcia Ann Carlson-Grissett gave Leanna Bessie Williams, a ride to the home of Ray Saunders. On March 5, Grissett's dead body was found on Saunders' living room floor. The State later charged Saunders and Williams with multiple felonies for the events that occurred after Grissett made the fatal mistake of accepting Williams' invitation to enter Saunders's home for a drink. The evidence presented at Saunders' separate trial portrayed the relevant events as set forth below.
Williams, who had been staying at Saunders's home, went out drinking with Saunders during the evening of February 29, 2000. As they were returning home in separate cars, Williams's car broke down and *237 Grissett, a passerby, offered Williams a ride. Williams then invited Grissett into Saunders's home.
Saunders, Williams, and Grissett consumed "whiskey and vodka" for some time. 9 Report of Proceedings (10/31/01) (RP) at 622. Saunders then asked Williams to persuade Grissett to participate in a sexual threesome. Grissett refused.
Williams began to beat Grissett about the back of her head while Saunders watched. He then went to his bedroom where he obtained handcuffs and leg shackles. Either Saunders or Williams or both placed these devices on Grissett. At some point, Saunders tried to force Grissett to perform oral sex on him; however, she continued to resist and she bit him.
Saunders then obtained a knife from the kitchen. When he came back into the living room, Grissett was on the floor and Williams was anally raping her with a television antenna; blood was coming from Grissett's anus.
Saunders moved toward Grissett and stabbed her in the chest with the knife; in addition, either he or Williams strangled her. Grissett died from the stabbing and the simultaneous asphyxia from strangulation.
At some point during the struggle, Saunders, Williams, or both had attempted to apply duct tape to Grissett's mouth to keep it closed. And Grissett's ankles were bruised from the leg shackles. Saunders had the keys to the shackles on a key chain in his home.
Saunders and Williams left Grissett's body on Saunders's living room floor where it remained until Sunday afternoon, March 5. At that time, a visitor looking for Saunders entered the house through the unlocked back door and discovered Grissett's body. The visitor called the police.
The police immediately commenced an investigation. First, they found an intoxicated Saunders at the Western R Café and asked him a few brief questions. Detective Pendrak then took him to the police station to speak to Detective Ringer but Ringer was not available at that time. While the police waited for Ringer, they attempted to "sober [Saunders] up" by giving him coffee and engaging him in discussion unrelated to the crime. 9 RP (10/31/01) at 591.
Ringer arrived about four hours later, at about 2:30 a.m. on March 6. He read Saunders his Miranda[1] rights, which Saunders voluntarily waived, and he then questioned Saunders and obtained his consent to tape further questioning. Eventually, Ringer placed Saunders under arrest. The following afternoon, Ringer again advised Saunders of his rights, again obtained a voluntary waiver of those rights, and continued the questioning.
The police later arrested Williams. She was wearing a watch that had belonged to Grissett.
In a second amended information, the State charged Saunders with intentional murder in the first degree or, in the alternative, felony murder based on rape, robbery, and kidnapping. It also charged him in separate counts with first or second degree robbery, first or second degree rape, and first or second degree kidnapping.
Following a preliminary hearing, the trial court ruled that after being advised of his Miranda rights, Saunders voluntarily, intelligently and knowingly waived those rights and made his statements without coercion. Consequently, it ruled that Saunders's post-Miranda statements were admissible along with the statements that he had made before the police took him into custody and the spontaneous statements he made before the police advised him of his Miranda rights.
The jury found Saunders guilty of murder under the felony murder alternative. It also found him guilty of first degree rape, first degree robbery, and first degree kidnapping. The trial court then imposed an exceptional sentence based on victim vulnerability and gratuitous cruelty.
Saunders appeals his conviction, claiming (1) improper admission of coerced statements; (2) erroneous admission of opinion testimony; (3) insufficient evidence to support the robbery and kidnapping convictions; *238 (4) ineffective assistance of counsel for failing to argue at sentencing that the rape, robbery, and kidnapping convictions merged with the murder conviction or, in the alternative, that the rape, robbery, and kidnapping were the same criminal conduct for sentencing purposes; (5) lack of judicial authority; and (6) cumulative error.

ANALYSIS

I. ADMISSION OF SAUNDERS' STATEMENTS
Saunders assigns error to the admission of the statements he made after he received Miranda warnings, claiming that the police obtained his consent to questioning through coercion. He supports this assignment with claims that he was intoxicated, detained in a windowless room, and provided coffee by the police throughout the night to keep him awake.
The State may not use statements acquired through custodial interrogation against a defendant who has not been both advised of his Miranda rights and knowingly, voluntarily, and intelligently waived those rights. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Aten, 130 Wash.2d 640, 663, 927 P.2d 210 (1996); U.S. CONST. amend. V, VIX. A confession is not voluntary if the totality of the circumstances indicate that the defendant did not exercise his free will or was coerced into making statements. State v. Broadaway, 133 Wash.2d 118, 132, 942 P.2d 363 (1997). In determining voluntariness, the trial court may consider the defendant's physical condition, age, mental abilities, physical experience, and police conduct. Aten, 130 Wash.2d at 664, 927 P.2d 210. We will not disturb a trial court's determination of voluntariness if there is sufficient evidence in the record to support a finding by a preponderance of the evidence that the confession was voluntary. State v. Cushing, 68 Wash.App. 388, 393, 842 P.2d 1035 (1993) (citing State v. Ng, 110 Wash.2d 32, 37, 750 P.2d 632 (1988)).
Here, substantial evidence supports the trial court's finding. After Ringer advised Saunders of his Miranda rights, Saunders indicated that he wished to voluntarily answer the detectives' questions and he signed a waiver form to that effect. After Ringer orally interrogated Saunders, Saunders consented to a taped interview.
On the tape, Ringer again advised Saunders of his Miranda rights and asked if Saunders understood those rights and voluntarily wished to answer questions. In each case, Saunders replied, "Yes, I do." When asked: "You're aware that this is being recorded?", he responded, "Yes I am." And he said that the police had his permission to record the interview. Clerk's Papers (CP) at 512.
The following afternoon, after the police had finally arrested Saunders for murder, the detectives advised him of his constitutional rights for a third time. Saunders once again responded that he would willingly answer questions and he did so.
Inebriation is a factor that we consider when determining whether a defendant voluntarily waived his rights, but inebriation is not dispositive. Aten, 130 Wash.2d at 664, 927 P.2d 210; State v. Reuben, 62 Wash.App. 620, 625-26, 814 P.2d 1177 (1991). The trial court noted in its findings that Saunders appeared inebriated during the interrogation sessions, but that the way he responded made it clear that he understood the questions.
The taped interview occurred seven hours after Saunders had his last alcoholic drink. By the time of the third interview, at least 15 hours had elapsed since Saunders had consumed alcohol. His responses to Ringer's questions during the taped interview appear knowing, voluntary, and intelligent.
The police made no threats or promises to induce Saunders' statements. And Saunders never asked for an attorney or invoked his right to silence. He was cooperative and gave clear answers throughout the interrogation process. Thus, the record supports the finding that Saunders made his statements voluntarily.

II. OPINION TESTIMONY BY DETECTIVE RINGER
Saunders cites to four occasions on which he contends that Ringer gave inadmissible *239 opinion testimony. Generally "[a] party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." State v. Stevens, 58 Wash.App. 478, 494, 794 P.2d 38 (1990) (citing State v. Guloy, 104 Wash.2d 412, 422, 705 P.2d 1182 (1985)). Here, Saunders objected to only one of these statements below. Nonetheless, we consider each instance because the admission of opinion testimony may be manifest error affecting a constitutional right. RAP 2.5(a); State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001).
The trial court has significant discretion when admitting evidence; we will not disturb its ruling absent an abuse of discretion. Demery, 144 Wash.2d at 758, 30 P.3d 1278. Abuse occurs when the trial court's decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). The appellant bears the burden of showing abuse of discretion. State v. Sponburgh, 84 Wash.2d 203, 210, 525 P.2d 238 (1974).
Opinion testimony generally is not admissible to indicate the guilt or innocence of a defendant. State v. Black, 109 Wash.2d 336, 348, 745 P.2d 12 (1987). Testimony that is "based on one's belief or idea rather than on direct knowledge of facts at issue" is opinion testimony. Demery, 144 Wash.2d at 760, 30 P.3d 1278 (quoting BLACK'S LAW DICTIONARY at 1486 (7th ed.1999)).
Saunders first challenges Ringer's statement that there were "a lot of inconsistencies [in Saunders' statements] between all three interviews." 12 RP (11/5/2001) at 756. And secondly, Saunders challenges further inferences by Ringer that he made conflicting statements to police. While discussing the "four different stories" Saunders told during his four different interviews, the State asked whether the text marked in orange were "things that [Saunders] fluctuated on." 12 RP (11/5/2001) at 813. Ringer replied "[y]es, he put himself at various places in the residence." 12 RP (11/5/2001) at 813.
A witness statement is not impermissible opinion testimony if it is "based on inferences from the evidence." City of Seattle v. Heatley, 70 Wash.App. 573, 578, 854 P.2d 658 (1993). In Heatley, the officer testified that the defendant was "obviously intoxicated" and "could not drive a motor vehicle in a safe manner." 70 Wash.App. at 577, 854 P.2d 658. The court found that this was not impermissible opinion testimony even though the issue before the jury was whether the defendant was "under the influence." Heatley, 70 Wash.App. at 577, 854 P.2d 658. The court stated that "[t]he fact that an opinion encompassing ultimate factual issues supports the conclusion that the defendant is guilty does not make the testimony an improper opinion on guilt." Heatley, 70 Wash. App. at 579, 854 P.2d 658.
Similarly, Ringer relied on his personal, direct knowledge of Saunders' statements in describing them as inconsistent. As Saunders did make conflicting statements on some points, Ringer's observation was rational and supportable. Thus, Ringer's testimony did not impermissibly invade the exclusive province of the jury and was not unacceptable opinion testimony. State v. Read, 147 Wash.2d 238, 249, 53 P.3d 26 (2002).
Thirdly, Saunders challenges Ringer's testimony about Saunders' phone records on the days surrounding Grissett's death. Ringer testified about the length of various calls to Saunders and about corresponding calls Bill Lindsay made to Saunders. Ringer based his statements entirely on his review of the phone records; he did not interject personal opinion, but merely explained the evidence to the jury. Because Ringer based his testimony on his direct knowledge of facts, and not his personal beliefs, this was not opinion testimony.
Finally, Saunders challenges Ringer's comment that Saunders' answers to questions "weren't always truthful." 12 RP (11/5/01) at 810. In determining whether this statement is improper opinion testimony, we consider the totality of circumstances in the case, including: "(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact." Demery, 144 *240 Wash.2d at 759, 30 P.3d 1278 (quoting Heatley, 70 Wash.App. at 579, 854 P.2d 658).
Ringer is a police officer whose testimony may particularly influence the jury because of its "special aura of reliability." Demery, 144 Wash.2d at 765, 30 P.3d 1278. And Ringer's testimony deals directly with Saunders' credibility in a case involving serious charges. But the record contains a considerable amount of untainted evidence indicating that Saunders was guilty of the crimes as charged.
We agree that Ringer's statement about Saunders' failing to always give truthful answers was improper opinion testimony, and that the admission of this evidence was constitutional error. State v. Farr-Lenzini, 93 Wash.App. 453, 459-60, 970 P.2d 313 (1999); see State v. Jerrels, 83 Wash.App. 503, 507-08, 925 P.2d 209 (1996) (prosecutorial misconduct eliciting witness comment as to truthfulness of another witness is reversible error even in absence of trial objection). But even a constitutional error does not require reversal if, beyond a reasonable doubt, the untainted evidence is so overwhelming that a reasonable jury would have reached the same result in the absence of the error. State v. Guloy, 104 Wash.2d at 425-26, 705 P.2d 1182. "Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless." Guloy, 104 Wash.2d at 425, 705 P.2d 1182.
Here, there is overwhelming untainted evidence that Saunders was responsible for the murder, rape, robbery and kidnapping of Grissett. Further, we are satisfied that the jury would have reached the same conclusion without the admission of Ringer's statement that Saunders was not always truthful in his answers to the police. Thus, the admission of Ringer's statement was harmless beyond a reasonable doubt.

III. SUFFICIENCY OF THE EVIDENCE
Saunders next argues that the evidence was insufficient to support the verdict on the robbery and kidnapping charges. In reviewing this issue, we consider the evidence in the light most favorable to the State, asking whether a rational trier of fact could have found guilt beyond a reasonable doubt. State v. Joy, 121 Wash.2d 333, 338, 851 P.2d 654 (1993); State v. Randhawa, 133 Wash.2d 67, 73, 941 P.2d 661 (1997).
A. Robbery
To convict Saunders of first degree robbery, the State relied on a theory of accomplice liability based on Williams's theft of Grissett's watch. RCW 9A.08.020. A person commits robbery when he
unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
RCW 9A.56.190. And if the robber was armed with a deadly weapon or inflicted bodily harm, he has committed first degree robbery. RCW 9A.56.200.
Saunders' primary contention here is that the evidence was insufficient to prove that the watch had belonged to Grissett. But Saunders identified the watch as Grissett's, and he said that Williams took it after Grissett's murder. The police later recovered the watch from Williams.
Viewed in a light most favorable to the State, a jury could determine beyond a reasonable doubt that Saunders's accomplice took the watch against Grissett's will by the use of deadly force. As these are the elements of first degree robbery, we will not disturb the jury's verdict.
B. Kidnapping
Kidnapping in the first degree occurs where the defendant "intentionally abducts another person with intent ... [t]o facilitate commission of any felony or flight thereafter; *241 or ... [t]o inflict bodily injury on him ... or [t]o inflict extreme mental distress on him or a third person." RCW 9A.40.020. The jury unanimously found Saunders guilty of kidnapping under all three alternatives.
In its jury instructions, the trial court defined "[a]bduct" as "to restrain a person by either: 1) secreting or holding the person in a place where that person is not likely to be found; and/or 2) using or threatening to use deadly force." CP at 369. The jury was further told that "[f]or purposes of 1) above, a person is abducted when held in areas either public or private under circumstances where it is unlikely that those persons directly affected by the victim's disappearance will find the victim." CP at 369.
The instructions defined restraint as the restriction of a "person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty. Restraint is without consent if it is accomplished by physical force, intimidation or deception." CP at 370.
Saunders argues that Grissett's entry into his home was voluntary and, thus, her subsequent involuntary restraint did not satisfy the requirements of kidnapping in the first degree. But initial voluntary action by the victim does not preclude a successful kidnapping claim. See State v. Harris, 36 Wash.App. 746, 753, 677 P.2d 202 (1984) (two women voluntarily went into defendant's car and defendants were convicted of kidnapping); see also State v. Johnson, 92 Wash.2d 671, 672, 681, 600 P.2d 1249 (1979) (two women voluntarily went into the defendant's home but kidnapping charge merged with the rape charge).
Saunders next contends that his home was not a "secreted place" because Grissett's car was outside the home and her dead body was in plain view inside the house for days after the murder. RCW 9A.40.010(2). This is not persuasive.
In State v. Green, cited by Saunders, a man snatched a child from a public sidewalk and took her behind a nearby apartment building. 94 Wash.2d 216, 222, 616 P.2d 628 (1980). The child was found within three minutes. Green, 94 Wash.2d at 224, 616 P.2d 628.
The Green Court held that the events did not occur at a "secreted" location because the child's rape and murder occurred in an area clearly visible to onlookers and the defendant made no attempt to isolate the victim from the public. 94 Wash.2d at 226-27, 616 P.2d 628. Thus, in Green, the evidence was insufficient to support the use of kidnapping as an element to prove aggravated first degree murder.[2]
Because Saunders left Grissett's body lying on the floor for more than four days, it was difficult to determine the exact chronology of events. But the evidence does show, contrary to Green, that Saunders forcibly restrained Grissett by placing her in leg shackles and handcuffs and taping her mouth shut. She was in a private home where the public had no access to her, was not able to come to her aid, and, thus, was unlikely to find her.
Moreover, the evidence indicated that Grissett was restrained by the threatened use or actual use of deadly force. RCW 9A.40.010(2). In addition to placing handcuffs and leg shackles on her, Saunders and Williams violently beat her before they strangled and stabbed her to death. Thus, the evidence was sufficient to prove each element of the crime of kidnapping.
Saunders next argues that evidence of the abduction does not support the kidnapping charge because the abduction was incidental to the kidnapping and "employed for the purpose of facilitating the rape." Br. of Appellant at 24. The concept of one crime being "merely incidental" to another originates from merger doctrine case law, which we address in Section IV(B) below. Johnson, 92 Wash.2d at 676, 600 P.2d 1249.
Appellate cases after Green have stated that merger doctrine analysis is not relevant to a sufficiency of the evidence challenge. Harris, 36 Wash.App. at 754, 677 P.2d 202; State v. Whitney, 44 Wash.App. 17, 20, 720 P.2d 853 (1986). But courts reviewing kidnap *242 charges as predicate offenses to other charges frequently borrow merger analysis in discussing sufficiency of the evidence and vice versa.
The Green Court explained that in looking at the facts used to prove restraint, the court must view the totality of the circumstances. 94 Wash.2d at 227, 616 P.2d 628; Harris, 36 Wash.App. at 752-53, 677 P.2d 202. It elaborated: "This characterization is as much a consideration of the relation between the restraint and the homicide as it is a measure of the precise distance moved or place held. It involves an evaluation of the nature of the restraint in which distance is but one factor to be considered." Green, 94 Wash.2d at 227, 616 P.2d 628.
Although the Green Court dealt with sufficiency of the evidence, it cited Johnson, a merger case, in explaining incidental predicate offenses. In Green, the State had to prove kidnapping, an uncharged offense, to establish an element of the charged crime of aggravated first degree murder. The Green Court stated:
[m]oreover, although appellant lifted and moved the victim to the apartment's exterior loading area, it is clear these events were actually an integral part of and not independent of the underlying homicide. While movement of the victim occurred, the mere incidental restraint and movement of a victim which might occur during the course of a homicide are not, standing alone, indicia of a true kidnapping.
94 Wash.2d at 226-27, 616 P.2d 628 (citing Johnson, 92 Wash.2d at 676, 600 P.2d 1249).
Following Green, this court addressed the quantum of evidence necessary to prove kidnapping as an element in two counts of first degree rape. Harris 36 Wash.App. at 752-54, 677 P.2d 202. We interpreted Green as follows: "evidence of restraint and movement merely incidental to a homicide is insufficient to establish kidnapping as an element of the murder." Harris, 36 Wash.App. at 752, 677 P.2d 202. To determine whether a crime is incidental to the "actual crime charged," the court must look to "the facts and circumstances surrounding the crime and the nature of the acts and their relation to the crime." Harris, 36 Wash.App. at 752-53, 677 P.2d 202.
In Harris, the victims were moved a greater distance than in Green, restrained for a longer period of time, and held in private places where they were not likely to be found. Harris, 36 Wash.App. at 753-54, 677 P.2d 202. Based on this evidence, we concluded that the evidence was sufficient to support the first degree rape convictions.
In Whitney, a sufficiency of the evidence case, the victim was "physically restrained without her consent by the use or threatened use of a knife and an intimidating dog and by secreting or holding her in his car, a place where she was not likely to be found." 44 Wash.App. at 21, 720 P.2d 853. Relying primarily on Harris, the Whitney Court held that this was sufficient to prove the elements of kidnapping for the purpose of elevating a rape charge to first degree. 44 Wash.App. at 21, 720 P.2d 853; see also State v. Brett, 126 Wash.2d 136, 166, 892 P.2d 29 (1995) (where evidence of kidnapping used to elevate degree of murder, "the mere incidental restraint and movement of the victim during the course of another crime which has no independent purpose or injury is insufficient to establish a kidnapping") (citing Green, 94 Wash.2d at 227, 616 P.2d 628; Johnson, 92 Wash.2d at 680, 600 P.2d 1249; and State v. Allen, 94 Wash.2d 860, 862-64, 621 P.2d 143 (1980)).
Here, the State specifically charged and convicted Saunders of first degree rape based on the infliction of serious physical injury, not on the commission of kidnapping or any other felony. Also, evidence that Saunders and/or Williams handcuffed, shackled and taped Grissett's mouth shut all indicate restraint above and beyond that required or even typical in the commission of rape. Thus, there was sufficient evidence of kidnapping that was not merely incidental to the rape.
Also, the State did not have to prove either rape or the infliction of physical injury to elevate the kidnap charge to first degree. The jury found another basis to do so intentional infliction of emotional distress. Nor was the forcible compulsion evidence *243 used to prove first degree rape essential to support the kidnapping conviction.
As the rape and kidnapping convictions had separate independent elements and as there was different proof of each charge, proof of one was not "merely incidental" to the other. Johnson, 92 Wash.2d at 676, 600 P.2d 1249. Thus, sufficient evidence supports each conviction.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL
Saunders asserts that defense counsel was ineffective by failing to (1) introduce evidence regarding the victim's drug use; (2) argue merger; or (3) argue same criminal conduct.
To establish ineffective assistance of counsel, Saunders must show that his counsel's representation was deficient and that he was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient only if it falls below an objective standard of performance. State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice results where there is a reasonable probability that but for counsel's deficient performance, the outcome would have differed. State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987).
There is a strong presumption that counsel is competent and provided proper, professional assistance. State v. Lord, 117 Wash.2d 829, 883, 822 P.2d 177 (1991). We will not find deficient representation if counsel's actions were tied to a legitimate strategic or tactical rationale. McFarland, 127 Wash.2d at 336, 899 P.2d 1251.
A. Victim's Drug Use
Saunders claims that defense counsel's failure to introduce evidence of Grissett's drug consumption on the night of her murder was prejudicial error.
There was ample evidence that Saunders, Williams, and Grissett consumed alcohol at Saunders's home and that Grissett had a blood alcohol level of .19 on the night of her death. There was additional available evidence about Grissett's and Saunders' drug use that defense counsel did not present.
It was reasonable trial strategy to avoid highlighting the victim's drug use. The jury could have viewed this evidence as a defense attempt to blame the victim for her own misfortune. Moreover, introducing evidence of Grissett's drug use could have opened the door to prejudicial evidence about Saunders's drug use.
Thus, we conclude that because the failure to introduce this evidence was a proper matter of trial strategy, it did not fall below an objective standard of reasonableness and was not deficient.
B. Merger
Saunders claims that counsel's failure to argue at sentencing that the rape, robbery, and kidnapping charges should merge with the first degree murder charge was deficient and prejudicial.
The merger doctrine prevents "pyramiding the charges." Johnson, 92 Wash.2d at 676, 600 P.2d 1249. Courts use the merger doctrine as a tool of statutory construction to determine when the legislature intends multiple punishments to apply to particular offenses. The doctrine applies where "the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act [that] is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping)." State v. Deryke, 110 Wash.App. 815, 823, 41 P.3d 1225 (2002) (quoting State v. Vladovic, 99 Wash.2d 413, 421, 662 P.2d 853 (1983)), aff'd, 149 Wash.2d 906, 73 P.3d 1000 (2003). Merger applies "only when a crime is elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code." State v. Parmelee, 108 Wash.App. 702, 710, 32 P.3d 1029 (2001).
Here, the jury unanimously found that Saunders was guilty of first degree murder because he and/or Williams killed Grissett in the commission of the crimes of first *244 degree kidnapping, robbery, and/or rape.[3] Thus, the State used proof of each of these predicate crimes to prove felony murder. Where a predicate offense is an underlying element of another crime, generally the predicate offense will merge into the second crime and the court may not punish it separately. Johnson, 92 Wash.2d at 676, 600 P.2d 1249; see also Vladovic, 99 Wash.2d at 421, 662 P.2d 853.
Courts apply an exception to this merger doctrine on a case-by-case basis; it turns on whether the predicate and charged crimes are sufficiently "intertwined" for merger to apply. Johnson, 92 Wash.2d at 681, 600 P.2d 1249; State v. Peyton, 29 Wash.App. 701, 720, 630 P.2d 1362 (1981). Thus, in Peyton, this court determined that the underlying offense of robbery did not merge with first degree felony murder because the robbery was a "separate and distinct act independent of the killing." 29 Wash.App. at 720, 630 P.2d 1362 (where officer was shot when defendant was fleeing from robbing a bank). But in Johnson, the kidnapping conviction merged into the rape conviction.
In Johnson, two girls voluntarily went with Johnson to his home. 92 Wash.2d at 672, 600 P.2d 1249. He summoned one girl to the bathroom where he declared his intention to rape her, held a knife to her neck, and bound her hands and mouth with adhesive tape. Johnson, 92 Wash.2d at 672, 600 P.2d 1249. He then similarly restrained the other girl, and raped both victims. Johnson, 92 Wash.2d at 672-73, 600 P.2d 1249. Johnson left to buy cigarettes, came back, and then took one of the girls to a wooded area where he raped her again. Johnson, 92 Wash.2d at 673, 600 P.2d 1249.
The Johnson Court found that the kidnapping was not separate and distinct from, but was merely incidental to the rape; thus, the kidnapping conviction merged with the rape conviction. This holding was based on facts showing that:
(1)the rape and kidnapping "occurred almost contemporaneously in time and place";
(2)the "sole purpose of the kidnapping and assault was to compel the victims' submission to the acts of sexual intercourse"; and
(3)there was "no injury independent of or greater than the injury of rape."
Johnson, 92 Wash.2d at 681, 600 P.2d 1249. Applying these three factors to the facts and convictions here, the predicate crimes and the murder are not sufficiently intertwined for application of the merger doctrine.
1. Robbery
In Peyton, we declined to merge the offenses of robbery and felony murder because "the crime of robbery was a separate and distinct offense from the felony-murder of which it forms an element." 29 Wash.App. at 720, 630 P.2d 1362. In Peyton, the defendant fled from a robbery and while police pursued him and his co-conspirators, an officer was fatally shot. 29 Wash.App. at 704-05, 630 P.2d 1362. We held that unlike Johnson, the predicate offense was not "intertwined" with the greater offense. Peyton, 29 Wash.App. at 720, 630 P.2d 1362.
Here, although the robbery and murder may have occurred close in time and place, the other Johnson factors indicate that merger of these two offenses is unwarranted. The record shows that Saunders and Williams committed the robbery after the murder and that they did not commit the robbery to facilitate the murder. Further, Grissett sustained an independent injury from the robbery, the theft of her watch. Thus, the robbery was separate and distinct from the murder.
*245 2. Kidnapping
We next consider whether the Johnson factors support merging the kidnapping into the murder charge. The evidence in this case is that Saunders and/or Williams bound Grissett's legs and wrists with shackles, that they taped her mouth shut, and that they forcibly applied these restraints well in advance of the murder.
As in Johnson, the restraint and murder occurred at the same place and apparently within hours of each other. 92 Wash.2d at 672-73, 600 P.2d 1249. But unlike in Johnson, the kidnapping had a purpose and injury separate from the murder.
According to the record, Saunders did not kidnap Grissett to facilitate the murder. Rather, Saunders and/or Williams restrained her to humiliate her and to retaliate for her refusal to comply with Saunders's sexual demands. The jury based its kidnapping conviction on a finding that Saunders acted with the intent to inflict extreme mental distress on Grissett. This extreme prolonged distress, along with the bruising around her wrists and ankles, indicates injuries independent from and beyond those perpetrated as part of the murder. Thus, the kidnap was separate and distinct from the murder.
3. Rape
The above analysis also shows that the rape was not "merely incidental" to the murder. Because the State could not obtain clear facts as to the timing of the events that night, we can only assume that the rape and murder occurred close in time and place. But Grissett clearly sustained independent harm exceeding that necessary to commit the murder.
Saunders and/or Williams raped Grissett with a television antenna, causing her to bleed from her anus. This injury was distinguishable from the subsequent murder and the conduct did not facilitate the murder. Thus, once again, the rape was separate and distinct from the murder. Consequently, counsel was not ineffective for failing to argue that the predicate crimes merged into the murder.
C. Same Criminal Conduct
Saunders also argues that counsel prejudiced him by failing to argue that the kidnapping, rape, robbery, and murder charges were the same criminal conduct for purposes of determining his offender score.
"Same criminal conduct" refers to the situation where there are "two or more crimes that (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim." State v. Vike, 125 Wash.2d 407, 410, 885 P.2d 824 (1994); RCW 9.94A.589(1)(a). We construe this phrase narrowly and will not find same criminal conduct if any of the three elements are missing. State v. Porter, 133 Wash.2d 177, 181, 942 P.2d 974 (1997).
Here, Saunders' crimes involved the same victim at the same place and occurred within a limited time period. Thus, the determinative question is whether each crime required the same criminal intent. To determine this, we look objectively at whether one crime furthered the other, or whether there was a substantial change in the nature of the criminal objective. State v. Dunaway, 109 Wash.2d 207, 215, 743 P.2d 1237 (1987); State v. Edwards, 45 Wash.App. 378, 382, 725 P.2d 442 (1986) overruled on other grounds by Dunaway, 109 Wash.2d at 215, 743 P.2d 1237.
The intent to commit theft of property was independent from the intent to commit the other felonies. Similarly, the criminal objective for murder was separate and distinct from the intent to commit the other charged crimes. Thus, the robbery and murder were not the same criminal conduct and it was not ineffective to argue otherwise.
The question is more complex with regard to the kidnapping and rape convictions. Our task is complicated by the absence of details as to the sequence of events that March 1 night. Based on the limited evidence, a fact finder could conclude that the perpetrators restrained Grissett as retribution for her past noncompliance with Saunders's sexual demands or to allow Saunders to accomplish his sexual agenda or both.
*246 In Edwards, the court found that kidnapping and assault were the same criminal conduct because they were "intimately related; there was no substantial change in the nature of the criminal objective ... [and] the assault was committed in furtherance of the kidnapping." 45 Wash.App. at 382, 725 P.2d 442. Similarly here, counsel could argue that the kidnapping was committed in furtherance of the rape and, thus, the kidnapping and rape were the same criminal conduct.
Clearly, the State could dispute this interpretation of the evidence. The jury concluded that Saunders committed the kidnapping with the intent to inflict extreme mental distress, in addition to the other intents. Thus, the State could argue that the kidnapping conviction was not the same criminal conduct.
Under the facts here, it appears that Williams's primary motivation for raping Grissett by inserting a television antenna in her anus was to dominate her and to cause her pain and humiliation. Because this intent arguably was similar to the motivation for the kidnap, defense counsel was deficient for failing to make this argument. Further, as the case law provides strong support to this argument, the failure was prejudicial. See State v. Tili, 139 Wash.2d 107, 122, 985 P.2d 365 (1999); Edwards, 45 Wash.App. at 382, 725 P.2d 442; State v. Taylor, 90 Wash. App. 312, 321, 950 P.2d 526 (1998).
Thus, counsel's decision not to argue same criminal conduct as to the rape and kidnapping charges constituted ineffective assistance of counsel and requires a remand for a new sentencing hearing where defense counsel can make this argument.

V. TRIAL JUDGE'S OATH OF OFFICE
In his statement of additional grounds for review (SAG),[4] Saunders challenges the authority of the trial judge to preside over the trial, claiming that the trial judge's written oath of office was invalid because it omitted the word "The" before "State of Washington" in the heading. SAG at 3.
Article 4, section 28 of the Washington State Constitution addresses the requirements for the oath of office for superior court judges, and there has been full compliance in this case. WASH. CONST. art. 4, § 28. The language that Saunders cites in WASH. CONST. art. 4, § 27, refers to the style of process. It states that "[t]he style of all process shall be, `The State of Washington,' and all prosecutions shall be conducted in its name and by its authority." WASH. CONST. art. 4, § 27.
An oath of office is not process within the meaning of this article. Nor does the omission of "The" in the judicial oath create any ambiguity as to the entity at issue. And even if the form of the oath were defective, the trial judge would qualify as a de facto officer. See State v. Britton, 27 Wash.2d 336, 344-46, 178 P.2d 341 (1947) (Official actions of judge in actual possession of office, exercising its functions and discharging its duties under color of title, are valid).

VI. CUMULATIVE ERROR
A defendant may be entitled to a new trial if cumulative errors resulted in a trial that was fundamentally unfair. In re Personal Restraint of Lord, 123 Wash.2d 296, 332, 868 P.2d 835, clarified, 123 Wash.2d 737, 870 P.2d 964 (1994).
Absent prejudicial error, there can be no cumulative error that deprived the defendant of a fair trial. State v. Stevens, 58 Wash.App. 478, 498, 794 P.2d 38 (1990). The only prejudicial error here, the failure to argue same criminal conduct, occurred post verdict and can be cured without a new trial. Thus, Saunders has not shown the necessity of a new trial.
We affirm the conviction but remand for resentencing with new counsel who shall have the opportunity to argue same criminal conduct.
I concur: BRIDGEWATER, J.
MORGAN, J. (dissenting in part).
Despite the majority's attempt to parse a single incident into multiple ones, the record shows a single incident involving a single *247 victim. Being bound by State v. Johnson,[5] which is directly on point, I would hold that one or more of the robbery, rape, and kidnap convictions merge with the felony murder conviction.[6] Being bound by the federal double jeopardy clause, which forbids convicting a defendant for two crimes involving the same facts and same victim if all the elements of one crime are included within the other, Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not"); United States v. Dixon, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) ("whether each offense contains an element not contained in the other; if not, they are the `same offence' and double jeopardy bars additional punishment and successive prosecution"); State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998); State v. Read, 100 Wash.App. 776, 790-92, 998 P.2d 897 (2000), aff'd, 147 Wash.2d 238, 53 P.3d 26 (2002), I would hold that one or more of the robbery, rape, and kidnap convictions are constitutionally impermissible. Thus, I agree with the majority's affirmance of Saunders' murder conviction; I disagree with the majority's affirmance of one or more of the other convictions; and I respectfully dissent in part.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In Green, the State did not charge kidnapping as an independent crime.
[3] Alternative two of Jury Instruction No. 8 requires each of the following elements to be proved beyond a reasonable doubt:

1) Marcia Carlson-Grissett was killed; and
2) the defendant and/or an accomplice to the following crimes was committing or attempting to commit:
1. Kidnapping in the First Degree, and/or
2. Robbery in the First Degree, and/or
3. Rape in the First Degree, and
3) the defendant and/or an accomplice caused the death of Marcia Carlson-Grissett in the course of and in furtherance of such crime or crimes or in immediate flight from such crime or crimes.
CP at 351.
[4] RAP 10.10(a).
[5] 92 Wash.2d 671, 600 P.2d 1249 (1979), cert. dismissed, 446 U.S. 948, 100 S.Ct. 2179, 64 L.Ed.2d 819 (1980). The present case does not involve the kind of anti-merger statute that controlled State v. Sweet, 138 Wash.2d 466, 476-78, 980 P.2d 1223 (1999).
[6] Cf. State v. Korum, No. 27482-5-II, 86 P.3d 166, 2004 WL 491571, *11 (Wash.Ct.App. Mar. 15, 2004) (kidnapping and robbery merge where kidnapping is merely "incidental.").