## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

### DIVISION II

| | | |
|---|---|---|
| STATE OF WASHINGTON, | | No. 45143-3-II |
| | Respondent, | |
| | | UNPUBLISHED OPINION |
| v. | | |
| MEKO DEAUNTE JONES, | | |
| | Appellant. | |

BJORGEN, A.C.J. — A jury found Meko Jones guilty of, among other offenses, two counts of second degree assault, one count of first degree kidnapping, and one count of first degree robbery. Jones appeals, contending that (1) his sentences for the assault convictions were unlawful because the combined term of confinement and community custody for each conviction exceeded the maximum allowed by statute, (2) his assault and robbery convictions merge, as do his kidnapping and robbery convictions, and (3) his counsel rendered ineffective assistance by failing to argue at sentencing that Jones's assault, kidnapping, and robbery offenses encompassed the same criminal conduct. In a pro se statement of additional grounds (SAG), Jones also alleges prosecutorial misconduct.

We hold that (1) the sentencing court erred in imposing a combined term of confinement and community custody that exceeded the maximum allowed for each of the second degree assault convictions, requiring a remand to correct the unlawful sentence, (2) none of Jones's convictions merge because of the way the State charged and proved each offense, and (3) Jones did not receive ineffective assistance of counsel because his assault, robbery, and kidnapping offenses did not encompass the same criminal conduct. We decline to address Jones's prosecutorial misconduct claim because he invited any error.

We affirm Jones's convictions, but remand to the sentencing court to correct his sentence for each of the second degree assault convictions so that the combined term of confinement and community custody for each conviction does not exceed the statutory maximum.

FACTS

Kayleigh Littlefield is the mother of Jones's son. Because of Jones's behavioral problems, she cut off his contact with their son around Christmas of 2012.

In early January 2013, Jones arrived at Littlefield's school and waited for her, carrying a pistol that he believed would enhance his persuasiveness in demanding to see his son. When Littlefield arrived, Jones accosted her, aimed his pistol at her, told her that she could not take his son from him, and demanded that Littlefield go on a walk with him. Littlefield assented, but when Jones demanded the keys to her car, Littlefield refused. Though the parties disagree on what exactly happened next, they do agree that the firearm discharged and the bullet struck Littlefield in the abdomen.[1] Littlefield then gave Jones the keys.

Jones demanded that Littlefield get into her car, and she complied out of fear that Jones would shoot her again. As Jones drove them toward his mother's house, he repeatedly struck the butt of his loaded pistol on Littlefield's dashboard. Again, Jones and Littlefield dispute exactly what happened, but they agree that at some point in the car ride the firearm discharged again and the bullet narrowly missed Littlefield as it flew past her, shattering the passenger side window.[2]

---

[1] Jones testified that the gun went off when Littlefield attempted to grab it. Littlefield testified that she could not remember exactly what happened, but that she had told the officer immediately after the incident that Jones had intentionally shot her.

[2] Jones contended that the gun again discharged accidentally when he struck it on the dashboard of Littlefield's car. Littlefield testified that she could not remember exactly what happened, but that the gun was close by her face when fired and that she had told the investigating officer soon after the shooting that it was intentional.

2

Once at Jones's mother's house, Jones continued to harangue Littlefield about their son while they sat outside in Littlefield's car. Jones eventually asked Littlefield how much money she had. She replied that she had $300 in her bank account. Jones then told Littlefield that he wanted money to get a shotgun to "shoot [her] mom." V Verbatim Report of Proceedings (VRP) at 43.

Jones then drove Littlefield to a nearby convenience store where he demanded Littlefield's automated teller machine (ATM) card and her personal identification number (PIN). Since Jones was still armed with the pistol, Littlefield felt that she had no choice but to comply. Jones went inside the store and withdrew $200 dollars from Littlefield's account, watching Littlefield, who remained in the car, through the store's window to make sure she did not attempt to escape.

Jones let Littlefield go after several more hours. She then drove herself to a hospital, received treatment for the gunshot wound, and survived.

Among other crimes, the State charged Jones with one count of first degree assault for the shooting of Littlefield outside her school, one count of first degree assault for the shot fired in Littlefield's car, one count of first degree robbery for taking Littlefield's ATM card and PIN, and one count of first degree kidnapping. The State alleged that each of these offenses was a domestic violence offense and that Jones was armed with a firearm during the commission of each.

After a trial, the jury found Jones guilty of, among other crimes, first degree kidnapping, first degree robbery, and two counts of the lesser included offense of second degree assault. The jury also found that (1) the assault, kidnapping, and robbery offenses were domestic violence

offenses because Jones and Littlefield were members of the same household and (2) Jones was armed with a firearm during the commission of the assaults, robbery, and kidnapping.

The sentencing court imposed a high-end standard range sentence for each of Jones's convictions, running each sentence concurrently with the sentences for Jones's other convictions and consecutively to each of the firearm enhancements, which ran consecutively to each other. For the two second degree assault convictions, this amounted to a sentence of 84 months of confinement for each underlying charge and 36 months of confinement for each firearm enhancement, for a total of 120 months for each conviction. The sentencing court also imposed an 18-month term of community custody for each of the second degree assault convictions.

Jones now appeals.

## ANALYSIS

### I. SENTENCING

Jones first contends that the trial court imposed a sentence in excess of its statutory authority for each of his second degree assault convictions. Specifically, Jones argues that the term of confinement and community custody imposed for each conviction exceeds the statutory maximum for each offense. The State concedes error. We accept the concession and remand for correction of his sentence.

Thomas's second degree assault convictions are class B felonies. RCW 9A.36.021(2)(a). The maximum allowed term for a class B felony is 120 months. RCW 9A.20.021(1)(b). A sentencing court "may not impose a sentence providing for a term of confinement or community custody that exceeds the statutory maximum" prescribed by RCW 9A.20.021. RCW 9.94A.505(5). If the combined term of confinement and community custody for a standard range sentence exceeds the statutorily permissible time, the sentencing court must reduce the term of

community custody to ensure a lawful sentence. RCW 9.94A.701(9); *In re Pers. Restraint of McWilliams*, ___ Wn.2d ___, 340 P.3d 223, 225, 2014 WL 7338498 at *2 (2014).

The sentencing court imposed a term of confinement of 120 months for each of Jones's second degree assault convictions: a standard range sentence of 84 months of confinement with 36 months for each firearm enhancement. The trial court also imposed a term of community custody of 18 months for each conviction. The 138-month total term for each offense exceeded the 120-month term permitted by RCW 9A.20.021(1)(b). We therefore remand the matter to the sentencing court to amend Jones's term of community custody to comply with RCW 9.94A.505(5) and .701(9). *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012) (per curiam).

## II. DOUBLE JEOPARDY

Jones next contends that his sentence violated double jeopardy because several of his convictions merge together. Specifically, he argues that the assaults and robbery merge because the assaults were necessary to elevate the robbery to first degree. He argues also that the kidnapping and robbery merge because the restraint involved in the kidnapping was incidental to the robbery. We review Jones's double jeopardy claims de novo, *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010), and hold that none of Jones's convictions merge.

Both the state and federal constitutions forbid the State from putting a person in jeopardy twice for the same offense. WASH. CONST. art. I, § 9; U.S. CONST. amend. V.[3] These constitutional provisions are coextensive, *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461

---

[3] Article I, section 9 of the Washington Constitution provides that "[n]o person shall be . . . twice put in jeopardy for the same offense." The Fifth Amendment to the United States Constitution provides the same guarantee, stating that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb."

(2010), and offer "three separate constitutional protections." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). They protect against (1) a second prosecution for the same offense after an acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Pearce*, 395 U.S. at 717; *Turner*, 169 Wn.2d at 454. Jones claims that his sentence violated the third protection offered by the prohibition on double jeopardy, because he received multiple punishments for the same offense by virtue of his separate convictions for assault, kidnapping, and robbery.

The legislature may, without offending the prohibition against double jeopardy, authorize cumulative punishments for acts that violate multiple criminal statutes. *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). Consequently, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). Thus, the resolution of Jones's claims require us to examine the legislature's intent.

We review de novo whether the legislature intended to permit multiple punishments using a three-part test. *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008). "We first consider express or implicit legislative intent based on the criminal statutes involved." *Kier*, 164 Wn.2d at 804. Where the legislature's intent remains unclear, we apply the "same evidence" test announced in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). *Kier*, 164 Wn.2d at 804 (citations omitted). That test examines whether the crimes are "the same in law and in fact." *Kier*, 164 Wn.2d at 804. Finally, where applicable, we use the merger doctrine as a means of ascertaining legislative intent regarding multiple punishments "where the degree of one offense is elevated by conduct constituting a separate offense." *Kier*,

6

164 Wn.2d at 804. Jones concedes that the first two parts of this test show no double jeopardy violation. Therefore, like Jones, we limit our analysis to the question of whether his offenses merge. *State v. Knight*, 176 Wn. App. 936, 953 n.17, 309 P.3d 776 (2013), *review denied*, 179 Wn.2d 1021 (2014).

In *State v. Berg*, ___ Wn.2d ___, 337 P.3d 310, 314 (2014), our Supreme Court summarized the merger doctrine in the following terms:

> Essentially, the merger doctrine states that where crime A and crime B are charged separately and completion of crime A is also an element of crime B, crime A will definitely merge into crime B if crime A was incidental to the commission of crime B. If crime A was not incidental but rather had an independent purpose . . . courts may impose separate punishment. Thus, the incidental nature of the crime is relevant to the application of an exception to the general merger doctrine.

We examine Jones's merger claims under this test.

1.      Assault and Robbery

Jones first contends that his two assault convictions merge into his robbery conviction because they "provided the force necessary to elevate the robbery to first degree." Br. of Appellant at 14. Jones's argument fails under *Berg*.

The legislature has provided that the infliction of bodily injury during the commission of a robbery elevates the robbery to first degree. RCW 9A.56.200(1)(a)(iii). To determine whether either of Jones's assaults merges with the robbery, we look to "the information, instructions, testimony and jury argument" to determine whether the State charged and proved that Jones committed first degree robbery because he inflicted bodily injury on Littlefield during commission of the robbery. *State v. Noltie*, 116 Wn.2d 831, 848-49, 809 P.2d 190 (1991).

The record before us shows conclusively that the State did not charge and prove first degree robbery by the infliction of bodily injury during the robbery. Instead, the record shows

7

that the State charged Jones with first degree robbery because he deprived Littlefield of personal property by use or threatened use of force and was armed with a deadly weapon when he did so. The evidence presented by the State at trial was consistent with this election. Littlefield testified that Jones committed the assaults some time before he robbed her. She testified also that she complied with Jones's demands for her ATM card and PIN, not because he assaulted her, but because he was armed with a firearm when he made the demands. Consistently with that evidence, the trial court instructed the jury that Jones committed first degree robbery if he deprived Littlefield of personal property while armed with a firearm. Significantly, the trial court *did not* instruct the jurors that the infliction of bodily injury during the robbery would elevate the robbery to first degree.

The charges, the evidence, and the jury instructions all show, therefore, that the assaults were not elements of the robbery and that the assaults had an independent purpose from that of the robbery. With that, these crimes do not merge under the characterization of merger in *Berg*, 337 P.3d at 314.

2.    Kidnapping and Robbery

Jones next contends that the first degree kidnapping conviction merged into the first degree robbery conviction because the kidnapping was incidental to the robbery. As our Supreme Court stated in *Berg*, "[t]he law is now settled that just as kidnapping can never merge into robbery, neither can robbery merge into kidnapping." *Berg*, 337 P.3d 310, 314 (citing *State v. Louis*, 155 Wn.2d 563, 571 120 P.3d 936 (2005)). In light of this settled law, Jones's claim is without merit.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Jones contends that his counsel rendered ineffective assistance by failing to argue at sentencing that the two assaults, robbery, and kidnapping convictions all encompassed the same criminal conduct. We review Jones's claim de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Because none of Jones's offenses occurred at the same time or in the same place as the others, and because many of them involved different criminal intents, Jones's crimes do not encompass the same criminal conduct. We therefore reject Jones's claim, since counsel cannot have performed deficiently by declining to make a meritless argument. *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518 (2010).

Both the state and federal constitutions guarantee criminal defendants the right to effective assistance of counsel.[4] *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). A claim of ineffective assistance requires the defendant to show that counsel performed deficiently and that this deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33 (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))). The deficient performance and prejudice showings are conjunctive, and we may resolve an ineffective assistance claim against a defendant failing to make the necessary showing on either. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

In deciding whether counsel's performance was deficient, we "strong[ly] presume[e] that counsel "provided proper, professional assistance" and "will not find deficient representation if

---

[4] Article I, section 22 of the Washington Constitution states that "[i]n all criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel." The Sixth Amendment of the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

counsel's actions were tied to a legitimate strategic or tactical rationale." *State v. Saunders*, 120 Wn. App. 800, 819, 86 P.3d 232 (2004) (citing *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 117 (1991)). The failure to argue that several crimes encompass the same criminal conduct can constitute deficient performance. *Saunders*, 120 Wn. App. at 824-25.

Offenses "encompass the same criminal conduct" for sentencing purposes where they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). We interpret the "same criminal conduct" language of RCW 9.94A.589(1)(a) "narrowly to disallow most claims that multiple offenses constitute the same criminal act." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). Accordingly, a defendant's failure to show that offenses involved the same criminal intent, same place and time of commission, and same victim "prevents a finding of same criminal conduct." *Porter*, 133 Wn.2d at 181.

The "same criminal intent" prong of RCW 9.94A.589(1)(a) "focus[es] on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next." *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987). Whether a defendant's criminal intent changed, in turn, depends, in part, on "whether one crime furthered the other." *Dunaway*, 109 Wn.2d at 215. The fact that Jones's conduct as a whole may have been motivated by a desire to see his son is beside the point. We examine instead how Jones's intent, objectively viewed, may have changed from one specific crime to the next. *Dunaway*, 109 Wn.2d at 215.

The "same time and place" prong of RCW 9.94A.589(1)(a) requires that offenses completely overlap in terms of their times and places of commission in order to constitute the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992). For example, in *Lessley* the defendant broke into his ex-girlfriend's parent's house and then

kidnapped her and her mother. 118 Wn.2d at 775. Lessley forced the ex-girlfriend to drive him to different places over the course of the kidnapping. *Lessley*, 118 Wn.2d at 775. On appeal, Washington's Supreme Court held that Lessley's burglary and kidnapping offenses did not encompass the same criminal conduct because they had different criminal intents, did not occur at the same time or in the same place, and involved different victims. *Lessley*, 118 Wn.2d at 778. The court noted that the burglary was complete at the ex-girlfriend's parent's house, but that the kidnapping "was carried out over several hours' time" in numerous places. *Lessley*, 118 Wn.2d at 778. Accordingly, the court held that "[t]he burglary and the kidnapping were not confined to the same time and place." *Lessley*, 118 Wn.2d at 778.

A.     The Assaults Do Not Encompass the Same Criminal Conduct

Generally, "there is one clear category of cases where two crimes will encompass the same criminal conduct— 'the repeated commission of the same crime against the same victim over a short period of time.'" *Porter*, 133 Wn.2d at 181 (quoting 13A SETH A. FINE, WASHINGTON PRACTICE § 2810, at 112 (Supp. 1996)) (emphasis omitted). That rule is not absolute, however, and repeated commission of the same completed crime against the same victim in a short period of time does not necessarily encompass the same criminal conduct. *State v. Grantham*, 84 Wn. App. 854, 858-60, 932 P.2d 657 (1997).

In *Grantham*, the defendant raped his victim twice in rapid succession. 84 Wn. App. at 856. The State charged Grantham with two counts of second degree rape for the offenses, a jury convicted him, and the trial court found that the two offenses did not encompass the same criminal conduct for sentencing purposes. *Grantham*, 84 Wn. App. at 857. We affirmed the trial court's findings because, after completing the first rape, Grantham "had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal

act." *Grantham*, 84 Wn. App. at 859. Because Grantham "chose the latter" option, he formed a new intent to commit a criminal act. *Grantham*, 84 Wn. App. at 859.

In light of *Grantham*, Jones's two assaults on Littlefield involved different criminal intents. Jones committed the first assault when he shot Littlefield. After shooting her, Jones obtained her car keys, ordered her into the car, drove off toward his mother's house, and continued to berate Littlefield loudly and violently for cutting off his access to his son. Jones had time to pause, reflect, and cease his criminal activity. He did not do so. Instead, he formed the criminal intent to assault Littlefield again. Under *Grantham*, the two assaults involved different criminal intents.

Jones's two assaults also did not occur at the same time or place. The first assault occurred around 7:00 a.m., when Jones shot Littlefield somewhere near her school. The second occurred sometime later in Littlefield's car after Jones drove her away from the school.

Because Jones's assaults involved different criminal intents, occurred at different times, and occurred in different places, they do not constitute the same criminal conduct. *Porter*, 133 Wn.2d at 181; RCW 9.94A.589(1)(a).

B.    The Assaults and the Kidnapping Do Not Encompass the Same Criminal Conduct

Even if we were to assume that both assaults shared the same criminal intent with the kidnapping,[5] the assaults did not occur at the same time and in the same place as the kidnapping. The first assault began and was completed outside of her school. The second assault began and was completed in Littlefield's car between the school and Jones's mother's house. The

---

[5] The first assault, objectively viewed, may have furthered the kidnapping because Jones shot Littlefield to prevent her from resisting the abduction. *See State v. Edwards*, 45 Wn. App. 378, 382-83, 725 P.2d 442 (1986), *overruled on other grounds by Dunaway*, 109 Wn.2d at 215. Jones makes no substantial argument as to how the second assault did the same, and since Jones had Littlefield secured in her car and was driving away, such an argument could not be accepted.

12

kidnapping began outside the school and continued for six hours in places as diverse as inside Littlefield's car, outside Jones's mother's house, in a convenience store parking lot, inside Jones's mother's house, inside Littlefield's car again, outside a pawn shop, in the alley where Jones met an acquaintance, and back at Jones's mother's house, where the kidnapping ended. The complete overlap in space and time necessary for a finding that the assaults and kidnapping encompassed the same criminal conduct was simply not present here. *Porter*, 133 Wn.2d at 181; *Lessley*, 118 Wn.2d at 778; RCW 9.94A.589(1)(a).

C.      The Assaults Do Not Encompass the Same Criminal Conduct as the Robbery

The assaults and the robbery had different criminal intents. Objectively viewed, Jones assaulted Littlefield to force her to comply with his commands to come with him or to instill fear in her. Objectively viewed, Jones committed robbery to "acquire property." *Dunaway*, 109 Wn.2d at 216.

Further, Jones's assaults and the robbery did not occur in the same place or at the same time. As noted above, the first assault took place at her school, the second happened later in Littlefield's car while Jones drove her to his mother's house, and the robbery occurred at some later time in a convenience store parking lot. None of the offenses occurred at the same time or in the same place as the others. *Lessley*, 118 Wn.2d at 778. For each of these reasons, the assault and robbery offenses did not encompass the same criminal conduct. *Porter*, 133 Wn.2d at 181; *Lessley*, 118 Wn.2d at 778; RCW 9.94A.589(1)(a).

D.      The Kidnapping Does Not Encompass the Same Criminal Conduct as the Robbery

In *State v. Larry*, we held that a continuing kidnapping which shared some temporal overlap with a robbery did not require the same criminal intent or occur in the same place or at the same time as the robbery. 108 Wn. App. 894, 34 P.3d 241 (2001). In *Larry*, two men

kidnapped a restaurant manager, robbed him, returned to the restaurant and forced the manager to open its safe, which they looted. *Larry*, 108 Wn. App. at 899. The two men then took the manager to various locations before shooting him and leaving him for dead. *Larry*, 108 Wn. App. at 899. We held that the kidnapping and robbery involved different criminal intents. *Larry*, 108 Wn. App. at 916. We also held that the robbery and the kidnapping did not occur at the same place or time because "the kidnapping occurred over a period of time and in several locations, whereas the robbery occurred at a single time and place." *Larry*, 108 Wn. App. at 916.

Here, as in *Larry*, Jones's kidnapping and robbery offenses involved different criminal intents. As in *Larry*, the kidnapping began before the robbery and continued long after it, continuing in places where the robbery did not occur. The different intents, places, and times prevent a finding that the kidnapping and robbery encompassed the same criminal conduct. *Porter*, 133 Wn.2d at 181; *Lessley*, 118 Wn.2d at 778; *Larry*, 108 Wn. App. at 916; RCW 9.94A.589(1)(a).

## IV. PROSECUTORIAL MISCONDUCT

In his SAG, Jones alleges that the prosecutor committed misconduct by ordering Littlefield and a police detective not to testify that Jones "was on a crack cocain[e] b[i]nge for day[s] [leading] up to the inc[i]dent." SAG at 2. The prosecutor told Littlefield and the detective not to mention Jones's drug use in order to comply with the trial court's order on a motion in limine. Jones moved for that order. Jones thus set up the error he now complains of, and we decline to review his claim under the invited error doctrine. *City of Seattle v. Patu*, 147 Wn.2d 717, 720, 58 P.3d 273 (2002).

## CONCLUSION

We affirm Jones's convictions, but remand to the sentencing court to correct his sentence for each of the second degree assault convictions so that the combined term of confinement and community custody for each conviction does not exceed the statutory maximum.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, A.C.J.

We concur:

_____
WORSWICK, J.

_____
MELNICK, J.