[No. 18307-2-II.    Division Two.    September 6, 1996.]
THE STATE OF WASHINGTON, *Respondent*, v. HARVEY
G. JERRELS, *Appellant*.

504

*Robert C. Brungardt, George A. Steele*, and *Brungardt & Lowe; Thomas E. Doyle*; and *Robert M. Quillian*, for appellant.

*Jeremy R. Randolph, Prosecuting Attorney* (counsel for appeal only), and *Ruth E. Vogel, Deputy*, for respondent.

ARMSTRONG, J. — Jerrels was convicted of rape of a child, child molestation, and assault, stemming from attacks on his daughter and on two stepchildren. At trial, the prosecutor asked Jerrels's wife whether she believed the children were telling the truth. Holding that this error deprived Jerrels of his constitutional right to a fair trial, we reverse his rape and child molestation convictions.

## FACTS

In April 1993, Child Protective Services removed Harvey Jerrels's 11-year-old daughter J.J. from his home after an incident in which Jerrels allegedly hit her in the face

with a glass bottle, giving her a black eye. Jerrels denied that he threw the bottle and claimed J.J.'s injury was an accident. Soon after this, while she was living with relatives, J.J. disclosed that Jerrels had sexually abused her. A police investigation led to charges that Jerrels had also raped and molested two of his stepchildren: "Mary,"[1] also 11, and "William," 6. "Mary" and "William," as well as Jerrels's 3-year-old daughter K., were removed from the home in July 1993.

At trial, Jerrels denied he had engaged in any sexual activity with his children, although he described two occasions on which he woke up in the morning, after his wife had gone to work, to find J.J. and "Mary" in his bed. On the first occasion, Jerrels said that upon awakening, he discovered he had had "some kind of a discharge" and "[i]t was all wet inside my long johns." Several weeks later, Jerrels said he woke up and the girls were again in his bed and were "wrestling" with him. Jerrels testified that no sexual touching occurred on either occasion, and that he made the girls leave.

J.J. testified that, since she was about nine, Jerrels had put his penis inside her "pee-pee" "a lot" of times, and he also put it in her mouth. She said that this happened in her parents' bed and that the other children were sometimes present. "Mary" gave similar testimony, stating that Jerrels had touched her inside her vagina and rear end with his penis. On cross examination, "Mary" admitted that she had her underwear on and could not explain how Jerrels could have penetrated her. "William" testified that Jerrels had grabbed his "pee-pee" with his hands on five occasions, touching his skin and not just his clothing.

A physician from the Child Sexual Assault Clinic testified that J.J. showed no medical evidence of sexual abuse, but because she had entered puberty such evidence would

---

[1]Because the children's names all begin with the same letter, we have used fictitious names for Jerrels's two stepchildren rather than identifying them by initials.

be very difficult to detect. The doctor also testified that she had observed scarring in the area just outside "Mary's" hymen. This kind of scarring "is considered a specific finding for sexual abuse." The date of the scarring could not be determined.

Jerrels's wife, who is "William" and "Mary's" mother, testified that she never observed any inappropriate activity between her husband and the children. She said she had had no suspicions of sexual abuse.

Jerrels was convicted of two counts of first degree rape of a child, two counts of first degree child molestation, and one count of third degree assault, stemming from the glass bottle incident. This appeal does not involve the assault conviction.

## DISCUSSION

Jerrels contends that the prosecutor committed misconduct while cross-examining Mrs. Jerrels. The prosecutor asked Mrs. Jerrels if she had thought about what the children had told their counselors regarding the alleged sexual abuse, then asked:

Q. And in fact, you made a decision on whether you believe it or not, haven't you?

A. No, I have not made a decision.

Q. About whether the kids are telling the truth?

A. I believe the kids are telling the truth, yes.

Q. We are talking about you believe that [J.J.] and ["Mary"] and ["William"] are telling the truth when they're talking about being molested by their dad?

A. Yes, I believe they are telling the truth.

On direct examination, Mrs. Jerrels had disputed "William's" testimony that she had once caught her husband engaging in inappropriate sexual activity with "William" and told him that if he didn't stop, he'd have to "pack up

and leave." On cross examination, Mrs. Jerrels again denied that the incident "William" described had occurred:

Q. And did you ever find ["William"] in the bed under the covers with Harvey with any kind of inappropriate activity going on?

A. No.

Q. Okay. So if ["William"] said that, do you believe that?

A. If ["William"] said that? I don't know what I believe from a 6 year old boy. Minds wander so much.

Q. Okay. But you've just testified that what he said happened didn't happen?

A. I don't think he would say that unless he was supposed to say that.

On re-cross, the prosecutor again asked:

Q. Mrs. Jerrels, now I'm a little confused. I'd like to be clear about what you believe. When you say you believe the kids, what are you saying? What is it you believe?

A. I believe my kids would tell the truth.

Q. Do you believe your kids did tell the truth?

A. I would think they would, yes.

Q. So if [J.J.] testified that your husband put his penis in her vagina, you would believe her?

A. Yes.

Defense counsel never objected to this line of questioning.

■ A prosecutor commits misconduct when his or her cross examination seeks to compel a witness' opinion as to whether another witness is telling the truth. *State v. Suarez-Bravo*, 72 Wn. App. 359, 366, 864 P.2d 426 (1994); *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993). Such questioning invades the jury's province and is unfair and misleading. *State v. Casteneda-Perez*, 61 Wn. App. 354, 362, 810 P.2d 74, *review denied*, 118 Wn.2d 1007(1991).

The questions asked of Mrs. Jerrels were clearly improper because the prosecutor inquired whether she believed the children were telling the truth; thus, misconduct occurred. In another sexual abuse case, we held recently that reversible error occurred when a pediatrician was allowed to testify that, based on the child's statements, she believed the child had been abused. *State v. Carlson*, 80 Wn. App. 116, 122, 129, 906 P.2d 999 (1995).

■ ■ But where, as here, no objection was made, such misconduct is reversible error only if it is material to the trial's outcome and could not have been remedied. *Suarez-Bravo*, 72 Wn. App. at 367. The misconduct must have been "so flagrant and ill intentioned that a curative instruction could not have obviated the resulting prejudice." *Suarez-Bravo*, 72 Wn. App. at 367; *see also State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Such misconduct violates a defendant's due process right to a fair trial. *Suarez-Bravo*, 72 Wn. App. at 367. To determine whether the misconduct warrants reversal, the court considers its prejudicial nature and its cumulative effect. *Suarez-Bravo*, 72 Wn. App. at 367.

Although "Mary's" medical exam indicated she had been sexually abused, it was not possible to determine when the abuse occurred. Thus, no definitive medical evidence linked Jerrels to this abuse. And no medical findings of abuse exist as to J.J. and "William." J.J. and "Mary" provided some corroboration of each other's testimony, but there were no other witnesses to the abuse.

Because credibility played such a crucial role, the prosecutor's improper questions were material and highly prejudicial. A mother's opinion as to her children's veracity could not easily be disregarded even if the jury had been instructed to do so. Also, the improper questions were asked three different times, giving them a cumulative effect.

Therefore, we hold that Jerrels was deprived of his right to a fair trial, and we reverse his rape and molestation convictions.

In light of this result, we need not address the issues that Jerrels raises in his pro se brief.

Reversed and remanded.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.