[No. 31237-9-II.   Division Two.   April 27, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDALL J.
STEVENS, *Appellant*.

*Scott M. Charlton* (of *Jefferson Associated Counsel*), for appellant.

*Juelie B. Dalzell, Prosecuting Attorney*, for respondent.

¶1 ARMSTRONG, J. — Randall J. Stevens appeals his conviction for second degree child molestation, arguing a number of issues, including that the court should have instructed on his defense of voluntary intoxication. We agree and, therefore, reverse and remand for a new trial.

## FACTS

¶2 Twelve-year-old H.G. and her thirteen-year-old cousin, M.G., were sitting near a shopping complex when they started talking with Randall J. Stevens. According to H.G., Stevens told the girls, "I'm the lead singer of Metallica." Report of Proceedings (RP) at 69. M.G. recalled that Stevens gave the girls a special hand shake and then asked, "Do you recognize who I am? . . . I'm a lead singer for Metallica." RP at 36. She also testified that he offered to get them something to smoke. M.G. testified that she believed he was drunk; eventually, neither girl believed he was really in Metallica.

¶3 Stevens testified that the girls initiated a conversation with him as he played air guitar while he walked down the street drunk. He claims they asked if he was in a band. He replied, "[N]ot right now because I'm drunk." RP at 122. Then they said he looked like "some guy from Metallica"; and he replied that once his band had the chance to back up Metallica. RP at 122-23.

¶4 Stevens testified that he left the girls and went to a nearby bus station to check the bus schedule. H.G. testified that she and M.G. encountered Stevens again about an hour and a half later at the ferry terminal. Stevens was carrying a brown paper bag containing a beer. M.G. thought he was drunk. Because the girls were not sure whether he was in Metallica, they asked for his autograph. Stevens

testified that when they asked him for his autograph, he said "Sure, but I'm nobody." RP at 125.

¶5 Stevens borrowed a mechanical pencil from a passer-by; he thought he was too drunk to make it work and then realized there was no lead in it. He claims the girls were laughing while he was trying to make the pencil work. M.G. also recalled thinking it was funny and laughing at him.

¶6 When Stevens first tried to write his autograph, he put the piece of paper just below M.G.'s collarbone and began trying to write. He was struggling with the pencil, and M.G. asked if he could put the paper on her back instead. She testified that she asked him to write on her back because she was uncomfortable having him write near her breasts.

¶7 But M.G. recalled that Stevens said her breasts were big for her age, to which she replied "[H.G.] has bigger boobs than me." RP at 44. She recalled that he laughed at this. She said the girls did not laugh—they just smiled.

¶8 M.G. testified that when Stevens returned the pencil to the passer-by, he swept his hand on her "butt." RP at 41. In contrast, H.G. recalled Stevens's hand brushing against M.G.'s bottom as he walked up to them on the second encounter. Based on this incident, the State charged Stevens with one count of second degree child molesting.

¶9 At H.G.'s suggestion, M.G. took a picture of H.G. and Stevens. In the picture, Stevens has his hand on H.G.'s breast and H.G. is smiling. At trial, Stevens explained the incident:

> I honestly really didn't mean to touch—I just wanted to make it look like it. I didn't mean to go all the way touching it for—but when I realized I did it it was right down, and—and I even told her, but she was still laughing, and I said, "I'm sorry." And, then, they said I cussed. Yeah, I said I was sorry about that, too. I do remember that because I was trying to change things about myself. I was trying to change that, um, my alcoholism was taking me to places that, um,—I was losing jobs left and right. . . . I was starting to scare myself. But, I really

didn't mean to do that. You know, it was just a sick joke. A bad joke.

RP at 127-28.

¶10 After the girls took several more pictures, Stevens described where he lived and told the girls they could come to the park and see him play music. The girls obtained Stevens's phone number, and H.G. saved it in her cellular phone. Based on these events, the State charged Stevens with two counts of luring.

¶11 H.G. testified that she did not remember Stevens making any comments about her body or M.G.'s body. She also did not remember him saying anything about either of the girls' breasts. But H.G. also testified that when the parties separated, Stevens said, "Hey remember when I grabbed your boob?" RP at 72. Based on this incident, the State charged Stevens with another count of second degree child molestation.

¶12 At trial, Officer Polizzi testified that he had interviewed the girls separately and that their statements were consistent with one another.

¶13 After the State rested, the court dismissed the two counts of luring. Stevens objected to the court's refusal to allow his proposed jury instructions on an intoxication defense. The jury acquitted Stevens of molesting M.G., but it convicted him of molesting H.G.

## ANALYSIS

### I. Jury Instructions

¶14 Stevens argues that to prove second degree child molestation, the State must prove sexual contact, and sexual contact is defined as touching for the purpose of sexual gratification. Stevens reasons that because the State must prove his specific intent (sexual gratification), the court should have given his voluntary intoxication instructions and should have included the specific intent of sexual gratification in the necessary elements instruction.

■ ■ ¶15 Instructions are adequate if they allow a party to argue its theory of the case and do not mislead the jury or misstate the law. *Barrett v. Lucky Seven Saloon, Inc.*, 152 Wn.2d 259, 266, 96 P.3d 386 (2004) (citing *Bell v. State*, 147 Wn.2d 166, 176, 52 P.3d 503 (2002)); *see also, State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). Failure to instruct on a party's theory of the case, where there is evidence supporting the theory, is reversible error. *Barrett*, 152 Wn.2d at 266-67 (citing *State v. Williams*, 132 Wn.2d 248, 259-60, 937 P.2d 1052 (1997)).

¶16 A person acts with criminal intent or intentionally when he acts with the objective or purpose to accomplish a result, which constitutes a crime. RCW 9A.08.010(1)(a). There is no express criminal intent element to the relevant language in the second degree child molestation statute. RCW 9A.44.086. The statute reads in part:

> A person is guilty of child molestation in the second degree when the person has . . . sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

RCW 9A.44.086(1). But "sexual contact" is "any touching of the sexual or other intimate parts of a person done *for the purpose of gratifying sexual desire* of either party or a third party." RCW 9A.44.010(2) (emphasis added).

■ ■ ¶17 The Supreme Court has recently held that sexual gratification is a defining phrase, not an element that must be included in the to-convict instruction. *State v. Lorenz*, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004). Nevertheless, whether we consider it an element or a definition of an element, the State must prove that Stevens acted with the intent of gratifying his sexual desires. If Stevens's touching was accidental or done for some purpose other than sexual gratification, he did not commit second degree child molestation. And voluntary intoxication is relevant on the issue of

Stevens's intent. RCW 9A.16.090;[1] *State v. Gallegos*, 65 Wn. App. 230, 237, 828 P.2d 37 (1992) (citing *State v. Coates*, 107 Wn.2d 882, 889, 735 P.2d 64 (1987)). Because of this, the court erred in refusing his proposed voluntary intoxication instructions.[2] Stevens raises other issues on appeal; we address only those that may arise on retrial.

## II. Prosecutorial Misconduct

### A. Consistency and Truthfulness

¶18 Stevens argues that the trial court erred in allowing the prosecutor to ask the investigating officer whether the two victims' statements were consistent. The State asserts that the testimony was proper because the consistency of the statements was a factual issue and did not involve the truth of the statements.

■ ¶19 The prosecutor may not ask a witness whether another witness is telling the truth. *State v. Jerrels*, 83 Wn. App. 503, 507, 925 P.2d 209 (1996) (citing *State v. Suarez-Bravo*, 72 Wn. App. 359, 366, 864 P.2d 426 (1994)); *State v. Padilla*, 69 Wn. App. 295, 299, 846 P.2d 564 (1993). The prosecutor's question of whether the victims gave consistent statements was not a direct question on whether the girls were telling the truth. But the question was relevant only on the issue of their truthfulness. Lack of consistency would suggest that the victims were either lying or at least mistaken. Consistency would suggest that the victims were truthful and accurate. Because the consistency question bears only on the victims' truthfulness and reliability, it is

---

[1] RCW 9A.16.090 states:

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of *any particular mental state* is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

(Emphasis added.)

[2] The State does not argue that Stevens laid an insufficient evidentiary foundation for involuntary intoxication instructions.

simply an indirect way of asking the officer if the girls were telling the truth. As such, the question was improper.

## B. Refreshing H.G.'s Memory

■ ¶20 Stevens asserts that the State committed prosecutorial misconduct by refreshing H.G.'s memory immediately before trial by allowing her to review both her written statement and the transcript of her oral statement to the investigating officer. Stevens cites no authority that an attorney may not refresh a witness's memory with the witness's pretrial statements and we are aware of none. Accordingly, we reject the argument.

## C. Assault

■ ¶21 Stevens contends the trial court should have given his proposed fourth degree assault instructions.

> An instruction on the close relative of an inferior degree offense, a lesser included offense, is warranted when two conditions are met: "[f]irst, each of the elements of the lesser offense must be a necessary element of the offense charged [and,] [s]econd, the evidence in the case must support an inference that the lesser crime was committed."

*State v. Fernandez-Medina*, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (alterations in original) (quoting *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)); *see State v. Thomas*, 98 Wn. App. 422, 424, 989 P.2d 612 (1999).

■ ¶22 In general, a person is guilty of second degree child molestation when he touches the sexual or other intimate parts of a child[3] for the purpose of gratifying his or the child's sexual desire. *See* RCW 9A.44.010(2), .086. A person is guilty of fourth degree assault if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he assaults another. RCW 9A.36.041(1). An "[a]ssault is, among other things, an unlawful touching." *Thomas*, 98 Wn. App. at 424 (citing

---

[3] As stated above, the child must be at least 12 years old but less than 14 years old and not married to the perpetrator and the perpetrator must be at least 36 months older than the victim. RCW 9A.44.086.

*State v. Walden*, 67 Wn. App. 891, 893, 841 P.2d 81 (1992)). " '[A] touching may be unlawful because it was neither legally consented to nor otherwise privileged, and was either harmful or offensive.' " *Thomas*, 98 Wn. App. at 424 (alteration in original) (quoting *State v. Garcia*, 20 Wn. App. 401, 403, 579 P.2d 1034 (1978)). "Intent is an implied element of fourth degree assault." *Thomas*, 98 Wn. App. at 424 (citing *State v. Walden*, 67 Wn. App. at 894); *State v. Davis*, 119 Wn.2d 657, 662, 835 P.2d 1039 (1992).[4] Second degree child molestation necessarily involves a purposeful or intentional and unlawful or unprivileged touching.

¶23 Stevens testified that he did not intend to touch H.G.; the touching was an accident. If the trial court examined only Stevens's testimony, it would have been justified in refusing to give the requested lesser included instruction. *Cf. Fernandez-Medina*, 141 Wn.2d at 456. But a trial court "must consider all of the evidence that is presented at trial when it is deciding whether or not an instruction should be given." *Fernandez-Medina*, 141 Wn.2d at 456. And the State's evidence could have supported an inference that Stevens committed second or fourth degree assault.

¶24 Specifically, the girls testified that Stevens purposefully or intentionally touched H.G.'s breast. H.G. testified that she felt violated by the touching. The State argued the inference that Stevens touched H.G. for the purpose of sexual gratification. And a reasonable juror might infer that she did not consent to the touching. On these facts and inferences, the jury could have found that Stevens intentionally touched H.G. without finding that he touched her with the purpose of sexual gratification. Further, by touching H.G.'s breast (a private body part) without consent or privilege, and in light of H.G.'s testimony that she felt violated, the evidence could have supported a finding that

---

[4] In *Walden*, the court held that fourth degree assault is not a lesser included offense of second degree rape as assault requires proof of intent and rape does not. *Walden*, 67 Wn. App. at 894. Further, it is not an "inherent characteristic" of second degree rape such that the latter cannot be committed without also committing the assault. *Walden*, 67 Wn. App. 893.

his touch harmed or offended H.G. Accordingly, the lower court erred in refusing to give the jury an instruction on fourth degree assault.

¶25 Reversed and remanded.

MORGAN, A.C.J., and HOUGHTON, J., concur.

Review granted at 155 Wn.2d 1024 (2005).