IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

MARTIN PIMENTEL RAMIREZ,

Appellant.

No. 79859-6-I

DIVISION ONE

UNPUBLISHED OPINION

SMITH, J. — Martin Pimentel Ramirez was charged with the following crimes against his stepdaughter, W.F.: one count of first degree child molestation, one count of third degree child molestation, and two counts of third degree rape of a child. During voir dire, numerous prospective jurors made comments indicating a bias against someone accused of child molestation. Additionally, W.F.'s mother testified during trial about a conversation with W.F. in which she learned of W.F.'s allegations against Pimentel Ramirez. The jury convicted Pimentel Ramirez as charged.

Pimentel Ramirez appeals, contending that the jury was biased against him and that W.F.'s mother's testimony about her conversation with W.F. was an improper opinion as to W.F.'s veracity. He also contends that his counsel was ineffective when he did not object to W.F.'s mother's testimony. Because Pimentel Ramirez failed to object at trial and does not show that the trial court's alleged errors constituted manifest constitutional errors that can be raised for the

Citations and pin cites are based on the Westlaw online version of the cited material.

first time on appeal, we decline to review the merits of his contentions. We further conclude that his counsel was not ineffective because the testimony was not objectionable. We therefore affirm.

FACTS

Pimentel Ramirez lived with Susana Izquierdo-Vasconcelos since approximately 2006, and they have two children together. W.F., who was 17 at the time of trial, is Izquierdo-Vasconcelos's daughter from a previous relationship. W.F. also lived with Izquierdo-Vasconcelos and Pimentel Ramirez.

On September 18, 2017, about one month after W.F. turned 15 years old, she reported allegations of sexual abuse by Pimentel to her school's family engagement liaison, Sonia Arnado. She later reported the same to her school's counselor, Judith Lutton, and Auburn Police Department Officer Matthew McNabb and Detective Douglas Faini.

The State charged Pimentel Ramirez with various counts of child molestation and rape of a child, and the case proceeded to trial. Pimentel Ramirez's counsel began by saying "[t]he word "molest" . . . is the ugliest, ugliest word in the dictionary. And that's because it's disgusting to think that someone could do something like that to a child." He then went on to discuss the need for a verdict "free from any type of bias, personal belief, or personal opinion."

Throughout voir dire, 19 jurors were excused for cause after they made statements indicating that they harbored a prejudice against those accused of child molestation. For example, juror 21 stated that the alleged crimes "honestly make[ ] me angry and a little bit sick. . . . [C]hildren are innocents. They're the

2

people who need to be protected. . . . [I]t's an abuse of power, trust." Juror 27 discussed an article where "[t]he author was illustrating the ineffectiveness of our system for protecting children."

Juror 53 stated, "My thoughts in general on any sort of sex crime is to believe the victim above all. Children and women in general have been dismissed for claims that they've made, and it angers me. And I don't feel that I can take their word as equally as the word of the Defendant." Four prospective jurors shared juror 53's perspective. Juror 56 likewise said, "I would just tend to believe the kid, because I don't think they have an agenda or any reason to lie in that case, especially the younger that they are." Juror 57 expressed "a pure hatred for those" convicted of child molestation. Juror 73 admitted, "[i]f I was to hear more testimony and more facts against him, I don't know if I could resist . . . hurting him myself." Juror 75 said, "If it was my choice, I'd give him life in prison, probably San Quentin prison, maybe in California, and I hope he rots in there."

Pimentel Ramirez's counsel did not seek a mistrial, move to discharge the venire, or object to any of the prospective jurors' comments. Instead, he posed the following questions to the remaining jurors:

> If you're selected and you did as you're instructed, you presumed him innocent all the way throughout the course of the trial and then you're going to back to deliberations and you're holding the verdict form. --
>       . . . .
>       . . . there's two boxes, guilty and not guilty, if the law required it, would you be able to find Mr. Pimentel-Ramirez not guilty?
>       . . . .
>       . . . And you can promise the judge that you'll follow her instructions on the law?

3

Each juror responded affirmatively to both questions, but one juror responded with apprehension and was excused under a preemptory challenge.

At trial, W.F. testified that Pimentel Ramirez had touched her inappropriately on multiple occasions beginning as early as 2008. She also testified that she wouldn't tell her mom about the incidents because she "felt that [her mom] was going to kick [her] out from the house."

When asked about Izquierdo-Vasconcelos's response to W.F.'s accusations, Officer McNabb testified, "She just didn't appear to believe [W.F.] and kind of questioned why she waited to report it." Izquierdo-Vasconcelos testified that when she arrived at the school

> the police officer told me in English what my daughter had told him, that my husband had touched her and that he had touched her for several years.
> So the police officer asked me whether I knew what was going on, and I said no, that I was just finding out. So I asked my daughter why hadn't she told me, and she said to me because she was afraid that I would not believe her. And I said, why wouldn't I believe you? You know, I'm your mother.

Pimentel Ramirez's counsel did not object.

The jury found Pimentel Ramirez guilty on all charges. He appeals.

ANALYSIS

Prejudicial Jury Venire

Pimentel Ramirez contends that his right to a fair trial by an impartial jury was violated because "[t]he jurors who served in this case were exposed to a lengthy and vivid discussion of their comrades' prejudice against those accused of child molestation as they explained why they could not be fair." Meanwhile,

the State contends that Pimentel Ramirez failed to preserve his challenge for appeal by failing to object below. We agree with the State.

"Ordinarily, we do not consider unpreserved errors raised for the first time on review." State v. A.M., 194 Wn.2d 33, 38, 448 P.3d 35 (2019). "However, manifest errors affecting a constitutional right may be raised for the first time on appeal." A.M., 194 Wn.2d at 38 (citing RAP 2.5(a)(3)). Specifically, "RAP 2.5(a)(3) requires only that the defendant make a plausible showing that the [asserted] error resulted in actual prejudice, meaning there were practical and identifiable consequences at trial." A.M., 194 Wn.2d at 39. And "'[t]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.'" State v. Grott, ___ Wash. ___ 458 P.3d 750, 757 (2020) (alteration in original) (quoting State v. O'Hara, 167 Wn.2d 91, 100, 217 P.3d 756 (2009)).

Here, none of the jurors who expressed a bias were seated. The jurors that were seated were questioned as to whether they could find Pimentel Ramirez not guilty if required by law, and they all responded that they could and would find him not guilty if that result was dictated by law. Because he failed to show that voir dire created a practicable and identifiable error, Pimentel fails to make a plausible showing that actual prejudice resulted from voir dire.

Pimentel Ramirez disagrees and relies on State v. Irby[1] for the proposition that "[a] trial court has an independent obligation to protect the right to an

---

[1] 187 Wn. App. 183, 347 P.3d 1103 (2015).

5

impartial, unbiased jury." In Irby, we concluded that Terrance Irby's failure to challenge two jurors for cause did not preclude him from raising on appeal the issue of actual bias of jurors. 187 Wn. App. at 193. But in Irby, one juror showed actual bias when she said, "I would like to say he's guilty" and that juror was seated on the jury. 187 Wn. App. at 190. We reviewed the claim of error on appeal because "if the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error." Irby, 187 Wn. App. at 193. Here, as mentioned above, no juror who expressed bias was seated. Therefore, Pimentel Ramirez's reliance on Irby is misplaced.

Pimentel Ramirez also relies on a Ninth Circuit decision, Mach v. Stewart, 137 F.3d 630 (9th Cir. 1997). Mach also is distinguishable. There, a prospective juror, Ms. Bodkin, a social worker, commented during voir dire that she had "taken psychology courses" including some in child psychology. Mach, 137 F.3d at 632. Also during voir dire, "Bodkin stated that she would have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an assault." Mach, 137 F.3d at 632. Following additional questioning by the judge, Bodkin stated, at least three more times, that "she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted." Mach, 137 F.3d at 632. Defense counsel moved for a mistrial, which the trial court denied. Mach, 137 F.3d at 632. But the trial court did strike Bodkin for cause. Mach, 137 F.3d at 632. On appeal, the Ninth Circuit concluded that "at least one juror was tainted" against the defendant due to the exchange.

Mach, 137 F.3d at 633. It further concluded that "[a]t a minimum, . . . the court should have conducted further voir dire to determine whether the panel had in fact been infected by Bodkin's expert-like statements." Mach, 137 F.3d at 633.

Here, the statements by the venire consisted only of personal bias and were not expert-like. The statements, therefore, did not carry a similar kind of persuasive authority by which the statements could have heavily influenced the venire. Additionally, Pimentel Ramirez's trial counsel *did* conduct further voir dire. And as mentioned, the additional voir dire indicated that the jury was not biased against Pimentel Ramirez. Finally, Mach did not involve an appellate determination under RAP 2.5(a)(3). Thus, Mach is distinguishable.

Pimentel Ramirez next contends that this case is similar to State v. Belgarde, 110 Wn.2d 504, 755 P.2d 174 (1988). Belgarde was on trial for first degree murder and attempted first degree murder. 110 Wn.2d at 505. At trial, two witnesses testified that they did not want to come forward because "Belgarde had threatened to use AIM (American Indian Movement) against them." Belgarde, 110 Wn.2d at 506. During closing argument, the prosecutor made highly prejudicial comments regarding AIM, including that they "'were butchers, that killed indiscriminately Whites and their own'" at Wounded Knee. Belgarde, 110 Wn.2d at 506-07. Belgarde failed to object, but our Supreme Court reviewed the error because the prosecutor's remarks were "flagrant, highly prejudicial and introduced 'facts' not in evidence." Belgarde, 110 Wn.2d at 508. Here, the alleged error is not prosecutorial misconduct and must satisfy the standard under RAP 2.5(a)(3). Thus, Belgarde is distinguishable.

Finally, Pimentel Ramirez cites State v. Guevara Diaz, 11 Wn. App. 2d 843, 456 P.3d 869 (2020).  There, we reviewed Mario Roberto Guevara Diaz's claim of an unfair trial because "the seating of a biased juror raises an issue of manifest constitutional error" and a seated juror said that they could not be fair to him.  Guevara Diaz, 11 Wn. App. 2d at 850, 852.  We reversed his conviction for second degree rape on that basis.  Guevara Diaz, 456 P.3d at 879.  As discussed above, here, no biased juror was seated.  Thus, Guevara Diaz is distinguishable.

Izquierdo-Vasconcelos's Testimony

Pimentel Ramirez contends that the trial court erred in admitting testimony from Izquierdo-Vasconcelos regarding W.F.'s veracity.  As before, Pimentel Ramirez's counsel did not object during trial or move for a mistrial.  Thus, we must first determine whether he has shown a manifest constitutional error subject to review for the first time on appeal.  We conclude that he has not.

State v. Kirkman is instructive.  159 Wn.2d 918, 155 P.3d 125 (2007).  There, in the trial for first degree rape of a child, A.D., Dr. John Stirling testified "that he found nothing in the physical examination to make him doubt A.D., but that there was also nothing to confirm A.D.'s explanation."  Kirkman, 159 Wn.2d at 923.  The court concluded that Detective Kerr's testimony was merely "an account of the interview protocol he used to obtain A.D.'s statement[, and he] did not testify that he believed A.D. or that she was telling the truth."  Kirkman, 159 Wn.2d at 931.  The court also concluded that Dr. Stirling's testimony was not an opinion on veracity because he "testified that his findings neither corroborated

nor undercut A.D.'s account." Kirkman, 159 Wn.2d at 930. And because neither opinion went to A.D.'s veracity, our Supreme Court concluded that neither the admission of Dr. Stirling's testimony nor the admission of Detective Kerr's testimony was a manifest constitutional error warranting review for the first time on appeal. Kirkman, 159 Wn.2d at 930, 931.

Similarly, here, while Izquierdo-Vasconcelos testified about a conversation she had with her daughter, Izquierdo-Vasconcelos did not say that she *did*, in fact, believe W.F.; Izquierdo-Vasconcelos testified only that she asked W.F. why she thought Izquierdo-Vasconcelos would not believe her. She offered no actual opinion directly or indirectly on W.F.'s veracity. Furthermore, unlike in Kirkman, Izquierdo-Vasconcelos was not an expert but a lay witness, and her testimony only intimated what most individuals know about mothers: they tend to believe their children. Thus, because the testimony was not an opinion on W.F.'s veracity, Pimentel Ramirez failed to make a plausible showing that actual prejudice resulted from the admission of Izquierdo-Vasconcelos's testimony.[2]

Pimentel Ramirez disagrees and relies on State v. Jerrels, 83 Wn. App. 503, 925 P.2d 209 (1996). There, Harvey Jerrels's 11-year-old daughter, J.J., alleged that "Jerrels had sexually abused her." Jerrels, 83 Wn. App. at 504-05. The prosecution asked Jerrels's wife what she meant when she said she

---

[2] Additionally, it was not clear from Izquierdo-Vasconcelos's testimony whether or not she believed W.F. Izquierdo-Vasconcelos testified that she never saw any inappropriate touching by Pimentel Ramirez and that she "never saw [Pimentel Ramirez] try to do anything." And Officer McNabb testified that Izquierdo-Vasconcelos "didn't appear to believe" W.F. and "questioned why [W.F.] waited to report it."

believed the kids, and Mrs. Jerrels responded, "'I believe the kids are telling the truth, yes,'" with regard to the alleged sexual abuse. Jerrels, 83 Wn. App. at 506. The Court of Appeals reviewed the claim of error for the first time on appeal because it involved prosecutorial misconduct that resulted in reversible error. Jerrels, 83 Wn. App. at 508. However, as discussed above, Izquierdo-Vasconcelos did not opine as to W.F.'s veracity or the truth of the allegations, and this case does not present an issue of prosecutorial misconduct. Thus, Jerrels is distinguishable.

Ineffective Assistance of Counsel

Finally, Pimentel Ramirez contends that he received ineffective assistance of counsel because counsel failed to object to Izquierdo-Vasconcelos's testimony. But as discussed, Izquierdo-Vasconcelos's testimony was not objectionable because it was not improper opinion testimony. Therefore, an objection was not warranted, and Pimentel Ramirez's counsel was not deficient or ineffective by failing to object. See State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (holding that the first step in determining whether the defendant's right to effective assistance of counsel was violated is whether counsel's performance was "deficient," and "[p]erformance is deficient if it falls 'below an objective standard of reasonableness based on consideration of all the circumstances'" (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995))). Therefore, Pimentel Ramirez's ineffective assistance claim fails.

We affirm.

_____

WE CONCUR:

_____     _____