IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

    Respondent/Cross-Appellant,

    v.

LUDLOW, ANTHONY L.,

    Appellant/Cross-Respondent.

No. 86576-5-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — A jury found Anthony L. Ludlow guilty of two counts of child molestation and one count of the rape of his stepdaughter, K.A. Ludlow now claims the State elicited testimony that commented on his right to remain silent and committed prosecutorial misconduct by eliciting testimony from K.A.'s mother, who, Ludlow asserts, wrongly opined on his guilt. We disagree with both claims, but we remand this matter for the court to strike, consistently with this opinion, certain community custody conditions from his judgment and sentence (J&S).

## I.    BACKGROUND

Over approximately a decade, Ludlow was married to and lived with Jennifer Ludlow, her three daughters from a prior relationship, and three children they had together. His eldest stepdaughter, K.A., accused Ludlow of sexually

assaulting her, starting when she was 13 or 14 until she was approximately 16 years old. The State charged Ludlow with child molestation in the second degree, child molestation in the third degree, and rape of a child in the third degree.

At trial, in addition to testimony from a number of relatives, K.A. detailed the abuse she suffered as a child, and that she did not initially tell her mother, when asked whether anything had happened, because she did not want to get Ludlow in trouble,

K.A.'s mother testified that she eventually confronted Ludlow and told him she did not want him to go in K.A.'s room, which prompted him to threaten to shoot her. She also testified that, soon after those threats, in June of 2017, she went to the police, who took reports from her and from K.A. Law enforcement then accompanied them back to their house so they could collect some belongings.

Ludlow also testified in his own defense, denying that he ever touched K.A. sexually.

The jury convicted Ludlow as charged. Following an April 2024 sentencing hearing, the court imposed numerous conditions of community custody in his J&S and in its attached appendix, in addition to a term of confinement. He timely appeals.

## II.    ANALYSIS

### A.    Whether the State Improperly Commented on Ludlow's Right to Silence

At trial, a detective who accompanied K.A. and her mother to collect their belongings testified that he informed Ludlow, in general terms, that K.A. had made allegations against him. In response, the detective further testified, that Ludlow's

"shoulders slumped, and he stared at the ground, and he stayed quiet."

Ludlow's counsel objected to the statement that he had "stayed quiet." After hearing from counsel, the court instructed the jury that they "may consider the part of [the testimony] that said his shoulder slumped and he stared at the ground but must disregard the part that said he stayed quiet."

Ludlow now argues this testimony, even as limited by the court, constituted an improper comment on the exercise of his constitutional right to remain silent. For its part, the State cross-appeals and avers that the court erred by instructing the jury to disregard the final portion of the detective's testimony. We hold neither party is entitled to affirmative relief.

In Salinas v. Texas, the United States Supreme Court confronted whether the Fifth Amendment barred the introduction of a defendant's pre-arrest silence as evidence of his guilt. 570 U.S. 178, 181, 133 S. Ct. 2174 (2013); U.S. CONST. amend V. In a plurality opinion, five justices held that Fifth Amendment did not bar such evidence. The three-justice lead opinion held that defendant's claim failed because he had not expressly invoked his right to silence by simply remaining silent. Id. The concurring opinion held his claim would have failed, "*even if* he *had* invoked the privilege" because, in their view, "the prosecutor's comments regarding his precustodial silence did not compel him to give self-incriminating testimony." Id. at 192 (Thomas, J., concurring) (emphasis added).

In State v. Magana, this court addressed the plurality holding in Salinas. 197 Wn. App. 189, 194-95, 389 P.3d 654 (2016), abrogated on other grounds by State v. Johnson, 4 Wn. App. 2d 352, 421 P.3d 969 (2018). We held that "[t]he

rule from Salinas is that absent an express invocation of the right to silence, the Fifth Amendment is not an obstacle to the State's introduction of a suspect's pre-arrest silence as evidence of guilt." Id. at 195.  To be clear, this rule applies to pre-arrest conduct; "Salinas does not apply," e.g., to custodial interrogations.  State v. Pinson, 183 Wn. App. 411, 418-19, 333 P.3d 528 (2014) (so concluding where "at the time of the interview [the defendant] had been handcuffed and taken to the front porch.  As a result, [the] interrogation was custodial[.]").

Our Supreme Court also has held that article 1, section 9 of Washington's constitution "is co-extensive with, not broader than, the protection of the Fifth Amendment['s]" right to silence.  State v. Earls, 116 Wn.2d 364, 374-75, 805 P.2d 211 (1991).  Since Salinas, our Supreme Court has not revisited whether there is an independent state basis for increased constitutional protection.  See, e.g., Ord. Granting Mot. for Recons., State v. Alvarez, No. 35567-5-III, at 3 (Wash. Ct. App. Jan. 23, 2020)[1] (concluding "that Washington Constitution article I, section 9 does not provide greater protections in this area than the Fifth Amendment to the United States Constitution . . . Whether those policy considerations are valid is a question best answered by our highest court.  Until permitted, we may not part from federal law in this area.").

Here, it is uncontested Ludlow was not asked any questions and did not speak during the interaction with law enforcement.  Accordingly, he did not expressly invoke a right to silence and, thus, was not protected by the Fifth

---

[1] We cite to this case, pursuant to GR 14.1(c), as necessary for a reasoned decision.

Amendment under this court's reading of Salinas.

Moreover, there is no evidence he was subjected to an unwarned custodial interrogation or seizure of any kind. There is no indication the officers in the entryway ever instructed him to stand anywhere in particular, or took other actions to curtail his movement. Thus, this matter does not fall outside Salinas's central holding.

In response, at oral argument, Ludlow's counsel argued that Salinas does not constitute binding precedent because a majority of that court did not agree on the *rationale* and, thus, counsel averred Magana was wrongly decided because we "misinterpreted Salinas in terms of its binding effect." Wash. Ct. of Appeals oral argument, State v. Ludlow, No. 86576-5-I (October 31, 2025), at 2 min., 26 sec. through 2 min., 33 sec. video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025101183/?eventID=2025101183.

It is true that a plurality opinion may not be binding precedent. See State v. Trey M., 186 Wn.2d 884, 901 n.9, 383 P.3d 474 (2016). But a principle of law reached by a majority, even in a fractured opinion, is binding precedent. Id.; see also In re Pers. Restraint Pet. of Schoenhals, 5 Wn.3d 375, 383, 576 P.3d 554 (2025) (noting that in the absence of a majority decision, the holding of the court is the position taken by those concurring on the narrowest grounds.)

That is precisely what occurred here. The concurring opinion refused to extend the principle "prohibit[ing] a prosecutor or judge from commenting on a defendant's failure to testify" to "a defendant's silence during a precustodial

interview." See Salinas, 570 U.S. at 192 (Thomas, J., Concurring). The concurring opinion simply disagreed with the path the lead opinion took, opining there was "a simpler way to resolve this case," concluding that it "agree[s] with the plurality that Salinas' Fifth Amendment claim fails." Id. at 191-93 (Thomas, J., Concurring). Therefore, Salinas is binding here.

Finally, Ludlow cites to non-binding authority addressing the scope of Salinas' central holding, including from states which have provided heightened constitutional protection based on their state law. At oral argument, Ludlow acknowledged he is inviting us to be the first court in Washington to so interpret Salinas and to broaden our state's protections. Wash. Ct. of Appeals oral argument, supra, at 5 min., 8 sec. through 6 min., 03 sec. We decline to do so, and conclude Magana is well-reasoned on both points.[2]

---

[2] Even if our analysis of Salinas is incorrect, any error was nonetheless harmless. First, the jury was given a limiting instruction, striking and excluding consideration of the most offensive statement. We presume a jury follows the court's instructions. State v. Emery, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Second, it is untrue that, as Ludlow asserts, the case "came down to the credibility of Ludlow's denial versus the credibility of K.A.'s allegation." The jury heard testimony from at least three other relatives, which bolstered K.A.'s testimony. One relative who had lived with them remembered she had found Ludlow and KA hugging in bed, had observed Ludlow ask K.A. to sit on his lap on a couch, and had seen him kiss her on the lips. Another relative testified she had found Ludlow and KA together in a room during a visit to her home looking as though they had been rolling around. A third relative's husband also testified, about the same visit, that he had heard sounds he believed indicated "promiscuous activity" before seeing K.A. and Ludlow appearing sweaty and with their clothing askew. Relatedly, Ludlow's reliance on State v. Knapp is misplaced as that matter is distinguishable. 148 Wn. App. 414, 199 P.3d 505 (2009). The claim there was one of prosecutorial misconduct, not a violation of his Fifth Amendment right. Id. at 421. Also, here, the State did not inject that fact into its closing argument, as it had in Knapp, increasing the prejudice. Id.

In sum, neither party's claim merits relief from this court.[3]

B.     Whether the State Elicited Improper Opinion Testimony

Ludlow next claims that K.A.'s mother improperly opined that he was guilty and that KA's accusations were credible, in violation of his Sixth Amendment right to have such questions decided by a jury. See U.S. CONST. amend VI. Relatedly, he avers that, even if his Sixth Amendment claim is not preserved under RAP 2.5, the State also committed reversible prosecutorial misconduct by eliciting her impermissible opinion testimony in violation of his due process rights. We disagree, as to both assertions.

As to the first assertion, impermissible opinion testimony regarding a defendant's guilt may be reversible error. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Likewise, generally, no witness may offer testimony in the form of an opinion regarding veracity, as that also invades the exclusive province of the jury. Id. However, "[t]estimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, is otherwise helpful to the jury, and is based on inferences from the evidence, is not improper opinion testimony." State v. Smiley, 195 Wn. App. 185, 190, 379 P.3d 149 (2016).

Moreover, under RAP 2.5(a), this court will not consider an issue raised for the first time on appeal unless it is a manifest error affecting a constitutional right.

---

[3] At oral argument, the State explained it only raised a crossclaim to make sure to comply with all possible procedural requirements. See Wash. Ct. of Appeals oral argument, supra at 12 min., 18 sec. through 12 min., 27 sec. But it clarified it is "not asking for any affirmative relief" apart from the request we hold there was no error as to the alleged unconstitutional comment. Id., supra at 12 min., 31 sec. through 12 min., 33 sec. We so hold and do not reach whether the court erred by striking that portion of the detective's testimony.

Kirkman, 159 Wn.2d at 926.  But witness opinion testimony admitted without an objection is not "automatically" reviewable as a manifest constitutional error.  Id. at 936.  Rather, our Supreme Court has held that to preserve a claim as a "[m]anifest error" in this context, there must be "an *explicit*" or "*almost explicit* witness statement on an ultimate issue" such as a defendant's guilt or a witness's veracity.  Id.  at 936-37 (emphasis added).  It explained this standard is "consistent with [] precedent holding the manifest error exception is narrow."  Id. at 936.

Because Ludlow did not object to the testimony he now challenges, he must demonstrate it was manifest constitutional error to permit these statements.  RAP 2.5.  We conclude he has not done so, as the challenged testimony did not relay an explicit or almost explicit opinion on guilt or credibility.[4]

Ludlow objects to three statements K.A.'s mother made during her direct examination, none of which he objected at trial.  First, the State asked her whether she had considered separation or divorce when her relationship with Ludlow became rocky in the spring of 2017, and she responded: "At that time no. I was feeling all of these emotions and trying to process what was going on at hand."  The State asked her to clarify what she was trying to process and she replied, "The gut feeling that *something inappropriate could be* going on with [K.A.], all of [K.A.]'s behaviors, his behaviors."  (Emphasis added.)

Second, the State asked if K.A.'s mother had spoken with Ludlow about her

---

[4] Although focused on preservation, our analysis "necessarily" discusses the facts underlying the errors alleged.  Kirkman, 159 Wn.2d at 926; cf. State v. Sutherby, 138 Wn. App. 609, 617-18, 158 P.3d 91 (2007), aff'd, 165 Wn.2d 870, 204 P.3d 916 (2009) (reaching the merits without addressing preservation).

"suspicions," and she stated he had denied anything was going on. The State then asked, "How did that make you feel?" and she answered, "A lot of different things. Kind of sick. I *didn't really believe it*." (Emphasis added.) She also explained she had waited for some period before going to the police, stating, "*I didn't want to believe it* was real. . . [b]ecause it's heartbreaking and sickening." (Emphasis added.)

Finally, the State asked whether she had ever spoken with K.A. about what happened between her and Ludlow, and she answered, "Not in depth, no." When the State asked her why not, she replied, "Because for her and for me it's a hard topic, and I know obviously *something* happened. It's overwhelming and gut wrenching to need to know all of the details." (Emphasis added.)

Each of K.A.'s mother's challenged statements expressed either generalized suspicions she had, or were in some way tentative or hedged. Indeed, Ludlow's opening brief implicitly acknowledges that, to interpret her third challenged statement—that she knew "*something* happened"—as a statement of guilt, the jury would have to make the kind of inference that lacks the explicitness Kirkman requires. Br. of Appellant at 45 ("In context, that 'something' clearly refers to sexual abuse.").

Moreover, even had Ludlow objected, we would still apply our Supreme "court's precedent that it is improper for any witness to express a personal opinion on the defendant's guilt." Kirkman, 159 Wn.2d at 937 (citing inter alia State v. Garrison, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967)). In Garrison, the question our Supreme Court found to be rightly excluded "literally asked the witness to

express an opinion on whether or not the appellant was guilty of the crime charged." 71 Wn.2d at 315. Our Supreme Court held that "[o]bviously this question was solely for the jury and was not the proper subject of either lay or expert opinion." Id.; see also Smiley, 195 Wn. App. at 190 (to be improper opinion testimony the comment must be a "direct" comment on defendant's guilt).

Viewed under this (perhaps less demanding) standard, the two principal cases Ludlow relies upon are distinguishable. In State v. Sutherby, the victim's mother testified she taught the victim "about telling the truth" and that "it's wrong to lie." 138 Wn. App. 609, 616, 158 P.3d 91 (2007), aff'd, 165 Wn.2d 870, 204 P.3d 916 (2009). The mother further testified that she could "tell when [the victim] has told a fib" by a facial gesture the victim would make when lying. Id. And the victim's mother stated that the victim had not done so when discussing the allegations. Id. at 617. This court held that the "mother's testimony regarding her daughter's credibility was wholly improper. Id. K.A.'s mother testimony, in contrast, was not in response to the State "literally" asking about the truth of the allegations or directly about any ultimate issue.

Similarly, in State v. Johnson, a witness testified that the victim's mother started crying and stated "Oh my God, *it's true*," when the witness told the mother details the victim knew about the defendant's anatomy. 152 Wn. App. 924, 932-33, 219 P.3d 958 (2009) (emphasis added). This court held that this testimony "really tells us only what [the victim's mother] believed—and the other witnesses thought [she] believed—about [the victim's] accusations." Id. at 933. K.A.'s mother's comments are not "comparable," analogous or even approach such a

10

direct statement about an ultimate issue, as Ludlow claims.

For similar reasons, we also reject Ludlow's alternative claim the State committed prosecutorial misconduct in eliciting K.A.'s mother's testimony.

"In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). As relevant here, a prosecutor commits misconduct when his or her examination "seeks to compel a witness' opinion as to whether another witness is telling the truth." State v. Jerrels, 83 Wn. App. 503, 507, 925 P.2d 209 (1996). What's more, where a defendant does not object to a prosecutor's conduct, misconduct is only reversible if it was "'so flagrant and ill-intentioned that a curative instruction could not have obviated the resulting prejudice.'" Id. at 508 (quoting State v. Suarez-Bravo, 72 Wn. App. 359, 366, 864 P.2d 426 (1994).

The State's questions on direct examination here are distinguishable from those in the single case Ludlow cites in support of his claim of misconduct, Jerrels. There, the State had explicitly asked two witnesses whether they "believe[d] that [the victims] are telling the truth when they're talking about being molested by their dad[.]" Jerrels, 83 Wn. App. at 506. This court held these questions were clearly improper, found misconduct, and reversed. Id. at 508-09. None of the questions the State asked K.A.'s mother "compel[led] her" to convey whether or not she believed Ludlow was guilty or K.A. had told the truth in her allegations. Id. at 507.

Moreover, Ludlow has not shown any asserted misconduct was flagrant and ill-intentioned, nor that no instruction could have cured any resulting prejudice. Id.

at 508. We presume that jurors follow the court's instructions. Emery, 174 Wn.2d at 766. In fact, the court did instruct the jury it was the sole judge of what weight to give witness testimony and supplied it with parameters to do so, including a witness' manner, personal interest, or any bias they might have shown. Ludlow's jury was entitled to credit or discount K.A.'s mother feelings or suspicions, as long as she was not compelled to give her belief on an ultimate issue. Accordingly, this assignment of error fails.[5]

C.     Conditions of Community Custody

        1.        Community Protection Zone Residential Restriction

In Ludlow's J&S, the court marked an "X" next to a pre-listed condition which states: "The defendant shall not reside within 880 feet of the facilities or grounds of a public or private school (community protection zone [as defined in]) RCW 9.94A.030." The court did not mark the preceding condition, which requires a defendant to "remain . . . within [or] . . . outside of a specific geographical boundary. . ." At oral argument, the State acknowledged there is no indication in the record that either provision was requested or discussed at sentencing. Wash. Ct. of Appeals oral argument, supra at 13 min., 45 sec. through 14 min., 17 sec.

        Ludlow claims the court lacked statutory authority to impose the former

---

[5] In addition, Ludlow argues that, based on his foregoing claims, cumulative error violated his due process right to a fair trial. Under the cumulative error doctrine, the combined effect of an accumulation of errors can require a new trial even if some of the errors do not constitute grounds for a new trial standing alone. State v. Coe, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). However, a defendant must prove the existence of multiple errors in order to establish that their cumulative effect necessitates reversal. See State v. Clark, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). Given that Ludlow does not prevail in establishing any error on the merits of the conviction, he is not entitled to relief under this doctrine.

because RCW 9.94A.703(1) requires courts to prohibit defendants from residing in "a community protection zone" if, among other conditions, they are sentenced for one of the crimes listed in RCW 9.94A.507(1)(a). He is correct that RCW 9.94A.507(1)(a) does not include the charges of which he was convicted,[6] which means 9.94A.703(1)(c) does not provide the statutory basis for this condition.

The State is also correct when it argues that a separate provision of RCW 9.94A.703 authorizes trial courts to circumscribe a defendant's geographic location as a matter of discretion. See RCW 9.94A.703(3) ("Discretionary Conditions. As part of any term of community custody, the court may order an offender to (a) [r]emain within, or outside of, a specified geographical boundary.").

However, the issue before us is whether or the not court imposed the challenged condition pursuant to proper statutory authority, as it must. State v. Warnock, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). And the record indicates that, on the one hand, the court apparently relied on the "community protection zone" provision of RCW 9.94A.703(1)(c), while on the other hand not exercising its discretion under RCW 9.94A.703(3)(a).

As a result, we order the court to strike this condition on remand as there is no statutory authority on this record. Id. (holding that "a court's authority to," there, order treatment is "circumscribed by statute[]" and "[b]ecause there is no evidence

---

[6] RCW 9.94A.507(1)(a) includes rape in the first degree, rape in the second degree, rape of a child in the first degree, child molestation in the first degree, rape of a child in the second degree, or indecent liberties by forcible compulsion, as well as other offenses with a finding of sexual motivation or any attempt to commit those crimes.

13

and finding" supporting the statute's conditions, striking the condition).[7]

2.    Payment of Crime-Related Counseling and Medical Costs

Additional condition 2 in the appendix to Ludlow's J&S orders that he "[p]ay all restitution and legal financial obligations, including the costs of crime-related counseling and medical treatment required by the court."

Ludlow argues that based upon the holding of State v. Land, the trial court could not order him to pay these costs without a restitution order, and there was no restitution order imposed in his case.  172 Wn. App. 593, 604, 295 P.3d 782 (2013).  The State concedes this condition should be stricken under Land.

We accept its concession for the same reasons this court articulated there, and order it to be stricken on remand.  See Land, 172 Wn. App. at 604 (concluding, "The State correctly concedes that this condition must be stricken.  The State did not seek restitution at the sentencing hearing on June 2, 2011, and the court did not order restitution at that time. The statutory time period requesting restitution has passed.")

3.    Computer Chatroom Prohibition

Additional condition 10 in the appendix to the J&S requires Ludlow's "not use computer chat rooms."  Under RCW 9.94A.703(3)(f), trial courts may impose crime-related prohibitions as a condition of community custody.  State v. Irwin, 191

---

[7] See also State v. Nelson, No. 39110-8-III, slip op. at 33-34 (Wash. Ct. App. Feb. 13, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/391108_unp.pdf (likewise holding that the court was not statutorily authorized to order conditions imposed because the conditions "seem[ed] to derive from RCW 9.94A.703(1)(c)," yet the defendant had not been convicted of an offense in 9.94A.507(1)(a)). We cite to this opinion pursuant to GR 14.1(c), as necessary to a reasoned decision.

Wn. App. 644, 656, 364 P.3d 830 (2015). A crime-related prohibition must relate "to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10).

Ludlow argues the court erred by imposing this condition as there is no nexus between his crimes and the prohibited activity. He notes the court, itself, had agreed to his objection to a similar condition (which prohibited the possession of or access to a computer) and chose not to impose it, along with another one (which prohibited access to the internet), ruling there "wasn't any evidence that I recall of a computer being used in any way[.]" The State concedes "[t]his condition should be stricken."

We accept that concession and order the trial court to strike condition 10 on remand. See State v. Zimmer, 146 Wn. App. 405, 413, 190 P.3d 121 (2008) (condition must be directly related to the crime); Irwin, 191 Wn. App. at 656 (substantial evidence must support determination a prohibition is crime-related.)

4. Conditions Affecting Ludlow's Right to Parent

Ludlow also challenges several additional conditions which affect the permissible scope of contact he can have with his children, and he asserts the court did not make sufficient findings on his right to parent before imposing them. Specifically, he assigns error to two restrictions which are each listed twice within the appendix to his J&S as separate, numbered conditions.

The first one (repeated as additional conditions 3 and 21) orders that he "not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the Supervising

15

Community Corrections Officer."

The second one (repeated as additional conditions 8 and 25) orders: "Do not remain overnight in a residence where minor children live or are spending the night." Id.

The court imposed the conditions after making the following oral findings:

> The conditions of community custody, I am going to include -- I will have to find them --the conditions about minor children. So what -- what the restriction specifically says, 21, is do not have contact with minor children, initiate or prolong contact, without the presence of an adult who is knowledgeable of the offense and has been [approved] by the supervising community custody corrections officer. So we'll see, but long term that could be Tracy[8] potentially. And all of these are subject to the corrections officer's approval, and under recent case law, the corrections officer can change them as they determine is appropriate, which would depend on school. But I think, given the situation in this case, these are -- 21 through 25 are all important parts of this sentence.

Parents indeed have a fundamental liberty interest in the care of their children that is protected by due process. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. As a result, any restriction on the right to parent imposed in a sentencing condition must be "sensitively imposed" and reasonably necessary to protect a child from harm. Id. at 377. Such conditions on the right to parent "must be narrowly drawn" and "'[t]here must be no reasonable alternative way to achieve the State's interest.'" State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020) (alterations in original) (quoting State v. Warren, 165 Wn.2d 17, 34-35, 195

---

[8] At the time of sentencing, Ludlow was in a relationship with a woman named Tracy Candelaria, who was a mother of minor children.

P.3d 940 (2008)). Moreover, generally, "[t]rial courts must conduct this inquiry on the record." Id.

In DeLeon, we remanded for the trial court to conduct further analysis on the record as to a condition which prohibited contact with all minors, and therefore included the defendant's biological children. Id. at 839, 841-42. We explained the court had not made sufficient findings on the record "necessary to interfere with DeLeon's fundamental right to the companionship of his children." Id. at 841. Specifically, we noted it did not address the defendant's right to parent, it did not set forth an explanation as to whether the condition was reasonably necessary to protect the children, and it did not analyze whether less restrictive alternatives existed to achieve that interest. Id.

We reach the same conclusions as to the analogous conditions Ludlow challenges here because the court did not acknowledge his right to parent, set forth whether the conditions were reasonably necessary to protect his children, or analyze any less restrictive alternatives. Id..

Therefore, we strike the conditions and order the court to make a proper inquiry on the record when considering whether to reimpose the conditions on remand, the merits of which we express no opinion.

5.    Ban from "Areas Where Minor Children are Known to Congregate"

Finally, additional condition 5 in the appendix to the J&S orders Ludlow to "not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer."

Ludlow argues this condition is unconstitutionally vague and cites to Irwin,

17

a case in which this court struck an identical condition for that reason. 191 Wn. App. at 652, 655. And, Ludlow rightly notes our Supreme Court has since held "the phrase 'where children . . . congregate' is vague standing on its own," but it is sufficiently specific to be permissible "when [it is] modified by a nonexclusive list of places illustrating its scope." State v. Wallmuller, 194 Wn.2d 234, 243-44, 449 P.3d 619 (2019). The parties agree, and the record indicates, no such list was provided here.[9]

The State, in turn, concedes the court should "narrow the previously imposed condition by the inclusion of [a]n illustrative list." We accept that concession and instruct the trial court to include a list of places to illustrate the condition's scope, should it reimpose it on remand.[10]

### III.    CONCLUSION

We affirm Ludlow's convictions, but we remand for the court to strike from Ludlow's J&S: (1) the community protection zone residential restriction; (2) additional condition 2; (3) additional condition 10; (4) additional conditions 3 (and 21) and 8 (and 25), and provide further analysis on the record on Ludlow's

---

[9] The condition's only specification is the phrase "as defined by the Community Corrections Officer", and it is worth noting that we specifically concluded that language did not suffice for purposes of due process in Irwin. 191 Wn. App. at 655.

[10] Ludlow's opening brief also challenged additional condition 15 appended to his J&S, which requires he "[p]articipate in urinalysis and polygraph examinations as directed by the supervising Community Corrections Officer, to ensure conditions of community custody." He argued it violated his right to privacy because he contended his convictions did not involve drug or alcohol use, but he has since withdrawn the claim in reply because he concedes a Supreme Court decision published after he filed his opening brief "disposes of the issue." (Citing State v. Nelson, 4 Wn.3d 482, 565 P.3d 906 (2025)). Additional condition 15 need not be stricken.

fundamental right to parent, should the court consider reimposing those conditions; (5) additional condition 5, and provide a list of illustrative locations, should the court consider reimposing the condition.

Díaz, J.

WE CONCUR:

Coburn, J.

Smith, J.